DANVILLE LOCAL UNION NO. 115 OF UNITED BRICK AND CLAY WORK-
ERS OF AMERICA et al. v. DANVILLE BRICK CO.

(Circuit Court of Appeals, Seventh Circuit. July 27, 1922. Rehearing Denied
September 12, 1922.)

No. 3026.

Commerce ☞16—Monopolies ☞12(1)—Interference with operation of brick fac-
tory held not to constitute "restraint of trade or commerce among the several
states" within Sherman Anti-Trust Law; production of goods destined for
shipment out of state is not "interstate commerce."

Interference with operation of brick factory, which in the ordinary
course of business shipped brick out of state, held not to constitute "re-
straint of trade or commerce among the several states," within Sherman
Anti-trust Act, §§ 1, 4 (Comp. St. §§ 8820, 8823), declaring combinations or
conspiracies in restraint of such trade illegal, and giving the federal
courts jurisdiction to prevent violations of the act, since the production of
goods destined for shipment out of the state does not constitute inter-
state commerce, and interference with such production does not consti-
tute a restraint of interstate commerce, where purely local in character
and confined to a single local industry, so that the effect on interstate
commerce is not immediate and appreciable.

[Ed. Note.—For other definitions, see Words and Phrases, First and
Second Series, Interstate Commerce; Restraint of Trade.]

Appeal from the District Court of the United States for the East-
ern District of Illinois.

Action by the Danville Brick Company, against the Danville Local
Union No. 115 of the United Brick and Clay Workers of America
and others. From an order granting a preliminary injunction enjoin-
ing defendants from doing certain acts interfering with the operation
of plaintiff's business, defendants appeal. Reversed, with directions
to dismiss bill.

Thomas A. Graham and A. B. Dennis, both of Danville, Ill., for
appellants.

Samuel Levin, of Danville, Ill., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVAN A. EVANS, Circuit Judge. This appeal is from an order
granting a preliminary injunction enjoining appellants from doing cer-
tain acts interfering with the operation of plaintiff's business. The
parties will be designated as they appeared below.

Plaintiff is an Illinois corporation conducting the business of manu-
facturing brick at Danville, Ill. Defendants, also residents of Illinois,
are former employees of plaintiff and members of certain local unions
of the United Brick and Clay Workers of America. Plaintiff's agree-
ment with defendants to operate as a union shop expired December
31, 1920, and, the parties having failed to agree upon terms of employ-
ment, the factory closed down January 1, 1921. On April 7, 1921, it
was reopened as a nonunion plant. A strike followed, and the defend-
ants resorted to picketing, in the course of which the acts complained

of were committed. Plaintiff, on June 7, 1921, sought and secured in the federal court a preliminary injunction.

The determinative question on this appeal is one of jurisdiction of the federal court. There is no diversity of citizenship. Jurisdiction is predicated solely upon an alleged violation of the Sherman Anti-Trust Act, the portion material to this case reading as follows:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is hereby declared to be illegal." Act July 2, 1890, c. 647, § 1, 26 Stat. 209 (Comp. St. § 8820).

Section 4 (Comp. St. § 8823) vests in the federal courts jurisdiction to prevent violations of the act. Restraint of interstate commerce, then, is the essential fact upon which jurisdiction must depend. Defendants' interference with the operation of plaintiff's business may, for the purpose of the argument, be conceded.

Plaintiff alleges that in the ordinary course of business it ships its products out of the state, and alleges in particular a certain contract to furnish brick to the city of Lafayette, Ind., performance of which was prevented by the acts of defendants. It does not appear that there was any direct interference with the transportation of goods, nor is there any allegation to that effect. Construing the evidence most favorably to the plaintiff, it appears, at most that the acts complained of interfered with the operation of the plant; i. e., with the process of production, and affected distribution of the goods beyond the state only to the extent that any interference with output ultimately reduces the quantity of goods available for distribution between states.

The question presented, therefore, is this: Does defendants' interference with the operation of plaintiff's factory constitute "restraint of trade or commerce among the several states," either (a) on the ground that production of goods destined for shipment out of the state constitutes interstate commerce; or (b) on the ground that the character 'of the course of conduct involved is such as to have a necessary and direct effect upon interstate commerce? That production as such is not a part of interstate commerce has been repeatedly decided and affirmed. Kidd v. Pearson, 128 U. S. 1, 20, 9 Sup. Ct. 6, 32 L. Ed. 346; Delaware, Lackawanna & Western Railroad Co. v. Yurkonis, 238 U. S. 439, 444, 35 Sup. Ct. 902, 59 L. Ed. 1397; Hammer v. Dagenhart, 247 U. S. 251, 38 Sup. Ct. 529, 62 L. Ed. 1101, 3 A. L. R. 649, Ann. Cas. 1918E, 724; Gable v. Vonnegut Machinery Co. (C. C. A.) 274 Fed. 66.

That acts which interfere with production ultimately diminish the quantity of goods moving in interstate trade is self-evident, and if the interference were sufficiently widespread the effect upon interstate commerce would be immediate and appreciable. But interference which is purely local in character and confined to a single local industry, as in this case, is so insignificant in its effect that it obviously cannot be said to have any direct or appreciable influence in restraining interstate commerce within the meaning of the Anti-Trust Act.

These views find direct support in the decision recently announced in United Mine Workers of America v. Coronado Coal Co., 258 U.

S. ——, 42 Sup. Ct. 570, 66 L. Ed. ——. It would serve no useful purpose to restate the voluminous recital of facts in that case. It is sufficient to say that the issue upon which the judgment in that case was based is identical with the issue in the case at bar. Justice Taft states it thus:

"There are five principal questions pressed by the plaintiffs in error here. * * * The fourth is that there is no evidence to show that the conspiracy alleged against district No. 21 and the other defendants was a conspiracy to restrain or monopolize interstate commerce."

We can add nothing to the vigorous statement of the law as set forth in the following excerpts from that opinion, which, in addition, reviews and distinguishes the chief cases relied upon by plaintiff in the case at bar and makes unnecessary any further comment upon them:

"Coal mining is not interstate commerce, and the power of Congress does not extend to its regulation as such. In Hammer v. Dagenhart, 247 U. S. 251, 272, we said: 'The making of goods and the mining of coal are not' interstate 'commerce, nor does the fact that these things are to be afterwards shipped or used in interstate commerce make their production a part thereof. Delaware, Lackawanna and Western Railroad Company v. Yurkonis, 238 U. S. 439.' Obstruction to coal mining is not a direct obstruction to interstate commerce in coal, although it, of course, may affect it by reducing the amount of coal to be carried in that commerce. We have had occasion to consider the principles governing the validity of congressional restraint of such indirect obstruction to interstate commerce in Swift v. United States, 196 U. S. 375; United States v. Patten, 226 U. S. 525; United States v. Ferger, 250 U. S. 199; Wisconsin Railroad Commission v. C., B. & Q. R. R., decided Feb. 27, 1922; and Stafford v. Wallace, decided May 1, 1922.

"It is clear from these cases, if Congress deems certain recurring practices, though not really part of interstate commerce, likely to obstruct, restrain, or burden it, it has the power to subject them to national supervision and restraint. Again, it has the power to punish conspiracies, in which such practices are part of the plan to hinder, restrain, or monopolize interstate commerce. But in the latter case the intent to obstruct or restrain interstate commerce must appear as an obvious consequence of what is to be done, or be shown by direct evidence or other circumstances. * * *

"This case is very different from Loewe v. Lawlor, 208 U. S. 274. There the gist of the charge held to be a violation of the Anti-Trust Act was the effort of the defendants, members of a trades union, by a boycott against a manufacturer of hats, to destroy his interstate sales in hats. The direct object of attack was interstate commerce. So, too, it differs from Eastern States Retail. Lumber Dealers' Association v. United States, 234 U. S. 600, where the interstate retail trade of wholesale lumber men with consumers was restrained by a combination of retail dealers by an agreement among the latter to blacklist or boycott any wholesaler engaged in such retail trade. It was the commerce itself which was the object of the conspiracy.

"In United States v. Patten, 226 U. S. 525, running a corner in cotton in New York City, by which the defendants were conspiring to obtain control of the available supply and to enhance the price to all buyers in every market of the country, was held to be a conspiracy to restrain interstate trade because cotton was the subject of interstate trade, and such control would directly and materially impede and burden the due course of trade among the states, and inflict upon the public the injuries which the Anti-Trust Act was designed to prevent. Although running the corner was not interstate commerce, the necessary effort of the control of the available supply would be to obstruct and restrain interstate commerce, and so the conspirators were charged with the intent to restrain.

"The difference between the Patten Case and that of Ware and Leland v. Mobile County, 209 U. S. 405, illustrates a distinction to be drawn in cases which

do not involve interstate commerce intrinsically, but which may or may not be regarded as affecting interstate commerce so directly as to be within the federal regulatory power. * * * And so in the case at bar coal mining is not interstate commerce, and obstruction of coal mining, though it may prevent coal from going into interstate commerce, is not a restraint of that commerce, unless the obstruction to mining is intended to restrain commerce in it, or has necessarily such a direct, material, and substantial effect to restrain it that the intent reasonably must be inferred. * * * In a national production of from 10,000,000 to 15,000,000 tons a week, or in a production in district No. 21 of 150,000 tons a week, 5,000 tons a week, which the Bache-Denman mines in most prosperous times could not exceed, would have no appreciable effect upon the price of coal or nonunion production."

The result of our consideration of the record and the legal principles involved leads us to conclude that the acts which were the subject of injunction did not constitute a restraint of interstate commerce, and that, consequently, the court was without jurisdiction to entertain the bill.

It is unnecessary for us to consider the other assignments of error, or the applicability of the Clayton Act (38 Stat. 730), other than to observe that the right to relief by injunction, which, under the Anti-Trust Act, is limited to the government, is under section 16 of the Clayton Act (Comp. St. § 8835o) extended to individuals.

The decree is reversed, with directions to dismiss the bill.