## BEDFORD CUT STONE CO. et al. v. JOURNEYMEN STONE CUTTERS' ASS'N OF NORTH AMERICA et al.

(Circuit Court of Appeals, Seventh Circuit. October 28, 1925.)

No. 3529.

Monopolies ⬦�net24(1)—Trade unions ⬦⟷6—Union held within rights in ordering members not to cut stone already partly cut by nonunion labor so that refusal of temporary injunction was proper.

Stone cutters' union and its officers, who, to induce quarries and fabricators of Indiana limestone to renew contract for employment of only union stone cutters, simply ordered that none of its members should further cut stone that had already been partly cut by nonunion labor, *held* within their rights, so that, though the tendency of such action be to restrain interstate commerce, yet it not appearing that they have resorted to or threatened to resort to unlawful acts or means to accomplish their lawful purpose, refusal of temporary injunction was proper.

Appeal from the District Court of the United States for the District of Indiana.

Suit by the Bedford Cut Stone Company and others against the Journeymen Stone Cutters' Association of North America and others. From an order denying a temporary injunction, complainants appeal. Affirmed.

Walter G. Merritt, of New York City, and Charles Martindale, of Indianapolis, Ind., for appellants.

Frederick Van Nuys, of Indianapolis, Ind., for appellees.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. The appeal is from an order denying temporary injunction under substantially these facts: Appellants are various quarriers and fabricators of Indiana limestone, a building stone found in large quantities in the district about Bedford and Bloomington. Appellees are the Stone Cutters' Association of North America, a labor union, and its officers, who, for many years prior to 1921, had contracts with these employers whereunder only members of the union were employed for cutting the stone after it was quarried. In 1921 the employers and the union failed to reach an understanding, and thereafter appellants employed nonunion stone cutters in their works, forming them into an association, membership in which was required to obtain employment as stone cutters with these employers. Appellee union has local organizations in most of the states, largely in the principal cities of the country. Appellants' product is very large, and most of it is sent to nearly all parts of the United States for use in buildings. Some is shipped in rough or sawed blocks of convenient sizes to be cut where sent, but most of it is, prior to shipping, partly cut for use in the different buildings, and the cutting is completed at place of building. Much of it is fully shaped and cut at or near the quarries, ready to be set into the buildings, but even this frequently requires some cutting at the building for more exact fitting.

After long negotiations and failure to reach a new working agreement, the union officers ordered that none of its members should further cut stone which had already been partly cut by nonunion labor, with the result that on certain jobs in different states stone cutters, who were members of the union, declined to do further cutting upon such stone. Where, as in some cases, there were few or no local stone cutters, except such as belonged to the union, the completion of the buildings was more or less hindered by the order, the manifest object of which was to induce appellants to make a contract with the union for employment of only union stone cutters in the Indiana limestone district. It does not appear that the quarrying of stone, or sawing it into blocks, or the transportation of it, or setting it in the buildings, or any other building operation, was sought to be interfered with, and no actual or threatened violence appears, no picketing, no boycott, and nothing of that character. The parties to the action reside in Indiana, and the sole ground of federal jurisdiction is the contention that appellees were conspiring to restrain interstate commerce, and that their conduct fell under the ban of the federal statute.

We are of opinion that under the facts appearing appellees were within their rights in thus undertaking to induce members of their craft to refrain from further cutting upon stone which had before been partly cut by nonunion labor, notwithstanding such refusal might have tended in some degree to discourage builders from specifying appellants' stone, and thus to reduce the quantity of their product which would enter interstate commerce. The tendency in greater or less degree thereby to restrain interstate commerce may be conceded, but, so long as it does not appear that appellees resorted or threatened to resort to unlawful acts or means to accomplish their lawful purpose, there was no impropriety in Judge Ander-

son's refusal to grant a temporary injunction, and his order denying same is accordingly affirmed.

The writer hereof, speaking for himself only, adds that, while it may be stating the same proposition somewhat differently, he is of the view that under the indicated facts interstate commerce within the purview of the statute is not here involved.

That the order to the union men to desist from further cutting such partly cut stone was to be operative in various states other than Indiana does not affect the question. It would be the same if all the cutting was done in that state, and the order effective there only. Under the stated facts the writer deems that this case falls fairly within the rule announced by the Supreme Court in United Mine Workers of America v. Coronado Coal Co., 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762, and United Leather Workers Union v. Herkert & Meisel Trunk Co., 265 U. S. 457, 44 S. Ct. 625, 68 L. Ed. 1104, 33 A. L. R. 566, as well as by this court in Danville Local Union et al. v. Danville Brick Co. (C. C. A.) 283 F. 909.

It is contended for appellants that the holding of the Supreme Court in the second Coronado Case, 268 U. S. 295, 45 S. Ct. 551, 69 L. Ed. 963 (opinion filed May 25, 1925), requires the conclusion here that this asserted conspiracy is in restraint of interstate commerce. In that case the court found there was new evidence appearing on the second trial tending to show that one of the very purposes of the extensive destruction of mines and other property, and of killing and injuring persons, was to prevent the large capacity of the mines destroyed, and other mines there, from entering into competition with the product of union operated mines in neighboring states. No evidence of any such purpose or conduct here appears nor of any purpose to restrain commerce. Wherefore the writer is of opinion that the District Court was in any event without jurisdiction to grant the demanded injunction.