THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* DANIEL W. POWERS, Individually and as Trustee, Impleaded, etc., Appellant.

WILL — TRUST FOR CHARITABLE PURPOSES — FAILURE TO DESIGNATE BENEFICIARY. The will of a testatrix, who died in 1882, gave, bequeathed and devised unto one D. W. P. a portion of her estate, accompanied with the following words : " This gift and devise is made upon the trust and confidence reposed in the said D. W. P., that he will dispose of the said property among the charitable and benevolent institutions or corporations in the city of Rochester as he shall choose, and such sums and proportions as he shall deem proper." *Held* — considering the provisions of the will under the law as it existed at the death of the testatrix and, consequently, not affected by chapter 701 of Laws of 1893, and assuming that the testatrix undertook to create a trust, and that "benevolent" as here used was intended to mean "charitable" — that the trust attempted to be created was unenforceable, for the reason of a failure to designate a beneficiary, or to designate or describe a class or kind of beneficiary to whom distribution was practicable, or that could with reasonable certainty be identified and ascertained.

*People* v. *Powers* (83 Hun, 449), reversed.

(Argued June 4, 1895 ; decided October 8, 1895.)

APPEAL from an interlocutory judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 2, 1894, which affirmed an interlocutory judgment of the Special Term overruling defendant's demurrer to the complaint.

The action was brought against Daniel W. Powers, personally and as executor of, and trustee under, the will of Martha Dunlap, deceased, and the following corporations: The Rochester City Hospital, the Rochester Home for the Friendless, the Industrial School of Rochester, the Rochester Orphan Asylum and the Rochester Female Charitable Society.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George F. Danforth* for appellant. The plaintiffs do not make a case which entitles them to any relief. (*People v. Simonson*, 126 N. Y. 304; *Levy v. Levy*, 33 N. Y. 97; *Lawrence v. Cook*, 104 N. Y. 632; *Phillips v. Phillips*, 112 N. Y. 197; *Riker v. Cornwall*, 113 N. Y. 115; *In re Ingersoll*, 131 N. Y. 573; *Warren v. Bates*, 98 Mass. 274.) If a trust can be spelled out of the words of the twelfth clause of the will it is void for indefiniteness and uncertainty. (*White v. Howard*, 46 N. Y. 144; Williams on Exrs. 638; *Demarest v. Osborne*, 140 N. Y. 43; *In re Jarman*, L. R. (8 Ch. Div.) 584; 3 Leigh, 457; *Levy v. Levy*, 33 N. Y. 97; *Dashill v. Atty.-Gen.*, 5 H. & J. 400; Perry on Trusts, § 709; *Salstonstall v. Sanders*, 11 Allen, 446; *Bascom v. Albertson*, 34 N. Y. 584; *People v. Simonson*, 126 N. Y. 307; 1 Greenl. on Ev. § 6; *Gordon v. Tiverdy*, 74 Ala. 232; *State v. Weiss*, 76 Wis. 177; *Robertson v. Bullions*, 11 N. Y. 248; *Hassan v. City of Rochester*, 67 N. Y. 525; *Kerr v. Dougherty*, 79 N. Y. 327; *Norris v. Thompson*, 19 N. J. 307; *Kennedy v. Hoy*, 105 N. Y. 137; *Morice v. Bishop*, 9 Ves. 399; *Power v. Cassidy*, 76 N. Y. 602; *Prichard v. Thompson*, 95 N. Y. 76; *In re O'Hara*, 95 N. Y. 493; *Holland v. Alcock*, 108 N. Y. 312; *Fosdick v. Town of Hempstead*, 125 N. Y. 592; *Fairchild v. Edson*, 77 Hun, 298.) The action cannot be maintained in the name of the People by the attorney-general. (*People v. Ingersoll*, 58 N. Y. 1; Code Civ. Pro. §§ 1781, 1782.)

*Theodore Bacon* for respondent. The objection that there is a defect of parties is untenable. (Code Civ. Pro. § 498;

14

*Hillman* v. *Hillman*, 14 How. Pr. 456, 460; *Newbould* v. *Warrin*, 14 Abb. Pr. 80; *Anderton* v. *Wolf*, 41 Hun, 571.) The objection that the provision in the will, if any, in favor of benevolent or charitable corporations is void because made within two months of the death of the testatrix is without force. (*Hollis* v. *D. T. Sem.*, 95 N. Y. 166.) The will of Martha Dunlap, by its twelfth clause, establishes an enforcible trust in favor of "the charitable and benevolent institutions or corporations in the city of Rochester," or of some one or more of them, to be determined in the first instance by the reasonable discretion of the trustee. (*Power* v. *Cassidy*, 79 N. Y. 602; *Williams* v. *Williams*, 8 N. Y. 578; *Owens* v. *Mis. Society*, 14 N. Y. 408; *Atty.-Gen.* v. *Syderfin*, 1 Vern. 224; *Atty.-Gen.* v. *Hickman*, 2 Eq. Cas. Abr. 193; *In re O'Hara*, 95 N. Y. 403; *Gumble* v. *Pfluger*, 62 How. Pr. 118; *Prichard* v. *Thompson*, 95 N. Y. 76; *Read* v. *Williams*, 125 N. Y. 560; *Lawrence* v. *Cooke*, 104 N. Y. 632; *Phillips* v. *Phillips*, 112 N. Y. 197; *Warner* v. *Bates*, 98 Mass. 274; *Malim* v. *Keighley*, 2 Ves. Jr. 529; *In re Keleman*, 126 N. Y. 73; *Colton* v. *Colton*, 127 U. S. 300; *Ricker* v. *Leo*, 133 N. Y. 519; *Holland* v. *Alcock*, 108 N. Y. 312; *Bull* v. *Bull*, 8 Conn. 47; 2 Pom. Eq. Juris. §§ 1025, 1026; *Fairchild* v. *Edson*, 77 Hun, 298.) In default of such action on the part either of Powers himself, who has expressly repudiated the trust, denied any obligation to the charities, and refused to make any distribution; who, having succeeded, by a process pointed out in the complaint, to all the rights of the next of kin of Martha Dunlap, has never filed any inventory or appraisal of the estate, or rendered any account of it; in default also of action on the part of the charities interested, of several of which the defendant Powers is trustee and president, the People of the state, as sovereign and succeeding to the rights and duties of the English Crown, are entitled to see to it that this public trust is enforced, and rightly bring their action in their Supreme Court for that purpose. (Code Civ. Pro. § 217; Laws of 1893, chap. 701; 3 Black. Comm. 427; 1 Spence Eq. Juris. 589;

2 Story's Eq. Juris. §§ 1162, 1191; 3 Pom. Eq. Juris.
§ 1096; *Atty.-Gen.* v. *Smart*, 1 Ves. 72; *Atty.-Gen.* v.
*Jeanes*, 1 Atk. 355; *Atty.-Gen.* v. *Whiteley*, 11 Ves. 241;
*Atty.-Gen.* v. *Brereton*, 2 Ves. 425; *Parker* v. *May*, 5 Cush.
336; *Atty.-Gen.* v. *Johnson*, Amb. 190; *Atty.-Gen.* v. *Mid-
dleton*, 2 Ves. 327; 2 Perry on Trusts, §§ 694, 744; *Atty.-
Gen.* v. *Harrow*, 2 Ves. 551; *Atty.-Gen.* v. *Dixie*, 13 Ves.
519; *Atty.-Gen.* v. *Stephens*, 3 M. & K. 347; *Atty.-Gen.* v.
*Stamford*, 2 Swans. 591; *Atty.-Gen.* v. *Newbury*, 3 M. & K.
647; *Atty.-Gen.* v. *Gleg*, 1 Atk. 356; *Jackson* v. *Phillips*,
14 Allen, 539; *Atty.-Gen.* v. *Garrison*, 101 Mass. 223;
*Owens* v. *Mis. Society*, 14 N. Y. 380; *Atty.-Gen.* v. *U. Ins.
Co.*, 2 Johns. Ch. 371; *People* v. *Miner*, 2 Lans. 396; *People*
v. *Ingersoll*, 58 N. Y. 14; *People* v. *Lowe*, 117 N. Y. 175;
*Char. Cor.* v. *Sutton*, 2 Atk. 400, 406.) We have chosen to
present the argument in support of the right of the People,
through their attorney-general, to proceed in enforcement of
this charitable trust, upon the dereliction of those specially
charged with that duty, by reference to general principles
and to the repeated declarations of English and New York
courts. But apart from principle and judicial decisions there
is ample and express statutory authority for maintaining this
action. (Code Civ. Pro. §§ 1781, 1804; *People* v. *Ballard,*
134 N. Y. 269; *Gildersleeve* v. *Lester*, 68 Hun, 532.)

HAIGHT, J. This action was brought to compel the defend-
ant Powers to account for the estate of Martha Dunlap in his
hands, and that he, as executor and trustee, be adjudged to
pay over to the five defendant corporations, and to such others
as may come in and duly establish their claims, all the estate
which, upon such accounting, shall be found applicable thereto
under the provisions of the will of Martha Dunlap, etc. Powers
interposed a demurrer to the complaint upon the grounds, first,
that the complaint does not state facts sufficient to constitute
a cause of action, and, second, that there is a defect of parties
because it is not alleged that " all the charitable and benevo-
lent institutions or corporations in the city of Rochester,"

referred to in the complaint, are plaintiffs or defendants in the action.

It appears from the complaint that Martha Dunlap died on the 15th day of May, 1882, at the city of Rochester, leaving an estate of real and personal property amounting to $100,000; that on the 22d day of March, 1882, she made her last will and testament, in and by which she bequeathed certain specific legacies to certain persons named, and created a trust for the benefit of her sisters, Mary Dunlap and Nancy Dunlap, during their lives, and then, by the 12th clause of the will, provided as follows: "I give, bequeath and devise unto Daniel W. Powers, of Rochester, N. Y., all the property given and devised by the 11th clause of this will which shall remain after the execution and termination of the said trust at the death of the said Nancy and Mary Dunlap. This gift and devise is made upon the trust and confidence reposed in the said Daniel W. Powers, that he will dispose of the said property among the charitable and benevolent institutions or corporations in the city of Rochester as he shall choose, and such sums and proportions as he shall deem proper." Upon her death the will was duly admitted to probate by the surrogate of Monroe county as a will of real and personal property, and letters testamentary were issued to Powers. Mary Dunlap and Nancy Dunlap have since died. It is alleged that each of the five corporations are domestic corporations organized and incorporated under the laws of the state of New York for charitable and benevolent purposes, located in the city of Rochester; that Powers had neglected and refused to distribute the estate of Martha Dunlap or any part thereof among them, and that notwithstanding such neglect and refusal, the defendant corporations have hitherto neglected or refused to institute any proceedings in the Surrogate's Court of Monroe county or elsewhere for the establishment and enforcement of the trust.

For the purposes of this case we shall assume that the testatrix in and by the 12th clause of her will undertook to create a trust, and that she had no intention of devising or bequeath-

ing any part of her estate to Powers individually. The
question is thus presented as to whether the trust is enforcible,
or void for indefiniteness. In the consideration of this ques-
tion certain general principles must be borne in mind. The
provisions of the will must be considered as of the time of the
testatrix's death, and under the law as it then existed. The
Law of 1893, chapter 701, has no application, for it was not
within the province or power of the legislature to change
vested rights of persons or parties in property. (*White* v.
*Howard*, 46 N. Y. 144; *Dammert* v. *Osborn*, 140 id. 43.)
Charitable uses are not exempt from the provisions of the
statute abolishing uses and trusts except such as are author-
ized thereby. (1 R. S. p. 727, § 45.) The system of charitable
uses as recognized in England prior to the Revolution,
together with the *cy pres* doctrine available to give effect to
trusts for charitable uses without any definite beneficiary has
no application in the law of this state. (*Bascom* v. *Albert-
son*, 34 N. Y. 584; *Holmes* v. *Mead*, 52 id. 332; *Holland* v.
*Alcock*, 108 id. 312; *Tilden* v. *Green*, 130 id. 29, 45, 67;
*Fosdick* v. *Town of Hempstead*, 125 id. 581.) When a donee
of a power has been given a discretion to exercise it for the
benefit of others he must exercise the discretion, and its exe-
cution cannot be delegated to others, and in case he, for any
reason, fails to' exercise the discretion and the power falls upon
the court for execution, the court distributes equally among
the whole class in which the donee was authorized to exer-
cise his discretion. (1 R. S. 734, § 100; *Hoey* v. *Kenny*,
25 Barb. 396-399; *Crooke* v. *Co. of Kings*, 97 N. Y. 421-
453.) The fact that the trustee is competent and willing to
execute the trust does not validate it, for the validity or
invalidity of the trust cannot depend on the will of the
trustee. And in order to create a valid trust, there must
be a beneficiary designated. It may not be necessary to
name him. It will be sufficient if he is so designated or
described that he can be identified. But where the gift to
a charitable use is so indefinite as to be incapable of being
executed by a judicial decree, the gift is void. (*Holland* v.

*Alcock,* 108 N. Y. 312; *Holmes* v. *Mead,* 52 id. 332; *Prichard* v. *Thompson,* 95 id. 76; *Read* v. *Williams,* 125 id. 560; *Levy* v. *Levy,* 33 id. 97.)

As we have seen, the trust is that Powers will dispose of the property among "the charitable and benevolent institutions or corporations in the city of Rochester as he shall choose and such sums and proportions as he shall deem proper." Charity means one thing, benevolence quite another. Benevolence includes all acts or gifts prompted by good will or kind feelings, and may be entirely independent of any thought or intention of charity. The recipient or beneficiary may be well-to-do and in no need of charity. In England, under the law of charitable uses, bequests for charity have been sustained, whilst benevolent gifts without a designated beneficiary have been held to be too indefinite, and, therefore, void. (*Norris* v. *Thomson's Exrs.,* 19 N. J. Eq. 307.) It is urged, however, that the word "benevolent" as used in this will is coupled with the word "charitable," and that the institution or institutions intended as beneficiaries must be both charitable and benevolent; in other words, that benevolent as here used was intended to mean charitable. This view, we think, we may properly adopt. Powers was then required to dispose of the property among the charitable institutions or corporations in the city of Rochester, either or both, or exercise his discretion in selecting from them. We think we may take judicial notice that in the prominent cities of our state there are numerous organized charities that are not incorporated as well as those that are incorporated. What are they? City hospitals, homes for the friendless, industrial schools, orphan asylums, aged female societies and children's homes, are common names in every city with which we are familiar. Again, we have charities connected with nearly every religious denomination and church. Many schools are supported by charity. Then come the social societies, the Masons, the Odd Fellows, the Knights of Pythias and numerous others, all incorporated and maintaining institutions of charity. Then there are the benevolent associations, the Ancient Order of United

Workmen, Supreme Tent of the Knights of the Maccabees of the World, the Benevolent and Protective Order of Elks and numerous others of like character, organized for the purpose of affording relief to a member or his family under certain contingencies, charitable in nature. Then, if we leave the list of corporations and enter the field of unincorporated institutions, we will find the King's Daughters, the Willing Workers and the sewing societies in nearly every circle and society. It will, thus, readily be seen that the including of all of the charitable institutions of a large city, both corporate and unincorporated, as the beneficiaries of the fund, was probably never contemplated or intended by the testatrix, and so including them would devolve duties upon the court which could only be discharged with the greatest difficulty, if capable of execution at all.

The Special and General Terms appear to have considered the case of *Power* v. *Cassidy* (79 N. Y. 602) as controlling in the support of the trust. In that case the bequest was : " I give to my executors, to be divided by them among such Roman Catholic charities, institutions, schools or churches in the city of New York, as a majority of my executrix and executors shall decide, and in such proportion as they may think proper." It does not appear to us that the two cases are parallel, or that the decision in one should control the other. The beneficiaries in each case are limited in locality to a single city. In this respect only are the cases parallel. The Roman Catholic is a well-known religious denomination whose societies cover a goodly portion of the civilized part of the globe. The territory is divided into dioceses. It maintains churches, schools, institutions and charities in each diocese, which are under the control and management of a bishop. The Catholic charitable institutions, schools and churches in a city are, therefore, substantially under the charge and management of one man. They constitute a limited and well-defined class by themselves, as distinguished from all other religious or denominational societies, and are easily known and readily ascertained. It was upon this ground, and for this rea-

son, the bequest in that case was sustained. That case was considered to be upon the border line, and in sustaining the bequest the court felt that it was going to the extreme limit of the rule, and, on several occasions since, it has taken the opportunity to say that the rule would not be extended beyond the facts of that case. In the will under consideration very different facts are presented. There is no limitation by class or kind ; the only limitation, as we have seen, is as to locality. Roman Catholic charities, institutions, schools, etc., are included with like institutions of every other denomination. Neither are the beneficiaries limited to religious denominations, for all kinds and classes of charities, religious or otherwise, are included.

In the *Levy* case (*supra*) a testator devised a farm, together with the residue of his real and personal property, to the people of the United States, or such persons as Congress should appoint to receive it in trust for the purpose of establishing and maintaining on the farm so devised an agricultural school for the purpose of educating children of warrant officers of the United States navy, whose fathers were dead, as practical farmers ; that if the United States refused to accept the bequest, he devised the same to the people of the state of Virginia for a like purpose, and if the legislature of Virginia declined to accept the trust he then gave it to certain Hebrew societies, naming them, in New York, Philadelphia and Richmond, with directions for them to carry out the trust for the benefit of the children of such societies who were between the ages of 12 and 16 years whose fathers were dead, etc. It was held that the bequest was too indefinite to be valid. Wright, J., in delivering the opinion of the court, says with regard to the trust to the Hebrew societies : " It is so utterly vague and indefinite that it could not be executed in the English chancery without invoking its *cy pres* power, a power in case of charity, as has been held by this court, having no existence in the jurisprudence of this state."

In *Holmes* v. *Mead* (*supra*) a certain parcel of land was devised to Mead and others to have and to hold the same dur-

ing the lifetime of two persons, naming them, and the survivor of them, upon a trust that the same should be used as a place of public worship for the performance of religious offices according to the doctrine and discipline of the Protestant Episcopal church in the United States of America, and upon the death of the longest liver of the two persons named then to convey the same to any trustee who may be authorized by any act of the legislature of the state to take and hold such church and premises as a place of public worship, and in case no such act of the legislature is then in force, to convey the same to the rector, wardens and vestrymen of St. Mary's Church, Beachwood, if such church shall be incorporated under any act of the legislature, and if there be no such incorporation then the said premises to go to his heirs. $5,000 was also bequeathed to the trustees to be invested and the income thereof paid annually for the support of the rector for the time being of St. Mary's Church, or for the support of the clergyman of the Protestant Episcopal church employed as a missionary, or otherwise, and who shall officiate therein, with the principal and income to be paid and transferred or disposed of in like manner as the lot of land devised to the trustees is directed to be conveyed or disposed of. It was held that the trust was invalid and could not be executed.

In *Prichard* v. *Thompson* (95 N. Y. 76) the testator bequeathed to his executors the sum of $150,000 upon the trust that they shall distribute and apply the same "to such charitable and educational uses and in such manner as shall be specified and directed in a codicil." He then declared that it was his purpose to prepare a codicil without unnecessary delay, and provided that in case a codicil should not be executed, that then the bequest was "upon trust to distribute the sum of $150,000 to and among such incorporated societies organized under the laws of the state of New York or the state of Maryland, having lawful authority to receive and hold funds upon permanent trust for charitable and educational uses as my said executors, the survivor, or survivors of them shall select for that purpose and in such several sums,

15

not exceeding in any case the amount that such incorporated
body is empowered by law to take and hold upon the use
aforesaid as they, my executors, the survivor or survivors of
them, shall determine." He died without making a codicil.
It was held that the gift was too indefinite to be capable of
being executed by a judicial decree ; that where a bequest
embraces unknown beneficiaries to an unlimited extent so as to
render it almost impossible to ascertain their number or char-
acter, it cannot be carried into effect.    Miller, J., in deliver-
ing the opinion of the court, speaking of the executors, says :
" If they are unable, or for any reason fail to perform, it is
difficult to see how a court of equity could enforce a perform-
ance.    It could not well control their discretion or exercise the
power conferred in their place and stead, or of the survivors or
survivor of either of them.  If they refuse to execute it, or the
power remains unexecuted, it is not apparent how the court
could make a selection, from the extensive range of societies
referred to, of those that should receive the bequest, or
of the proportion in which it should be divided.  Neither
could the court select individuals to perform a duty
devolving upon the trustees, who are selected no doubt
by reason of personal confidence in their judgment,
and their capacity for the task imposed.  Another dif-
ficulty presents itself as an obstacle in carrying out
the trust in question.  The beneficiaries referred to, consisting
of every corporation within two states of the character named
in the will, would be almost innumerable and none of them
could claim that any specific portion of the bequest belonged
to them.  Until selected by the trustees they would have no
such interest as would give them a standing to compel an
enforcement of the bequest.  It is a well-settled and estab-
lished rule that, where a gift to a charitable use is so indefinite
as to be incapable of being executed by a judicial decree, the
representative of the donor must prevail over the charity."
Again, he says : " Here no class is designated, and as we have
already intimated, if a court of equity should be called upon,
or assume to take upon itself the responsibility of carrying

into effect the bequest of the testator, it would be obliged to bestow upon every charitable and educational institution within the two states named a portion of the fund in question. This would be a matter of great difficulty if not impracticability, and would inevitably lead to serious embarrassment in the discharge of the duty of disposing of the fund in question. In such a contingency it would seem to be reasonable that the fund should be equally divided among all the institutions named, and thus the right of selection which was intrusted in the judgment, good sense and kindly feelings of the executors as a matter of personal confidence would be of no avail."

In *Holland* v. *Alcock* (108 N. Y. 312) the bequest was to executors in trust to be applied by them for the purpose of having prayers offered in a Roman Catholic church, to be by them selected, for the repose of the soul of the testator and the souls of his family, and also the souls of all others who may be in purgatory. It was held that the trust attempted to be created was invalid; that there was no beneficiary in existence who could demand the execution of the trust.

In *Read* v. *Williams* (125 N. Y. 560) the bequest was to such charitable institutions and in such proportions as the executors by, and with the advice of the testatrix's friend, Rev. John Hall, D. D., shall choose and designate. After the death of the testatrix the executors, with the advice of Hall, made a written designation of certain incorporated charitable institutions to take the bequest. It was held that under the language used the charitable institutions of the whole world capable of taking by devise or bequest were eligible, and that it was not such a trust as could be carried into execution by the court, and it was, therefore, void.

In *Fosdick* v. *Town of Hempstead* (125 N. Y. 581) the bequest was to the town to keep as a fund for the support of the poor of the town. It was held that the bequest was indefinite and invalid for a want of an ascertained beneficiary, the poor of the town being too general.

In the *Tilden* case (130 N. Y. 29) the bequest was to exec-

utors in trust, authorizing them upon the organization of the Tilden Trust to convey or apply to the use of the same his residuary estate, or so much thereof as they may deem expedient, but in case such institution should not be incorporated, or if for any cause or reason the executors shall deem it inexpedient to convey the residuary estate or any part thereof, or to apply the same or any part thereof to such institution, he authorized his executors and trustees to apply the rest, residue and remainder to such charitable, educational and scientific purposes as in the judgment of the executors and trustees will render the rest, residue and remainder of his property most widely and substantially beneficial to the interests of mankind. It was held that no property had been devised or bequeathed to the Tilden Trust; that the payment of any sum to it was left discretionary with the executors and trustees; that it was connected with and could not be separated from the concluding clause directing them to dispose of the estate to such charitable, educational and scientific purposes as in their judgment would most widely and substantially benefit the interests of mankind, and that the provision was too vague and indefinite to be capable of execution.

Applying the rule of these cases to that under consideration, it appears to us that the conclusion is inevitable that the trust attempted to be created is unenforceable, for the reason of a failure to designate a beneficiary, or to designate or describe a class or kind of beneficiary to whom distribution is practicable, or that can with reasonable certainty be identified and ascertained.

Upon the argument it was contended that the attorney-general or the people had no standing in court to enforce a trust for the benefit of others, but the view taken by us with reference to the validity of the trust renders it unnecessary to consider this question.

The interlocutory judgment should be reversed and the demurrer sustained, with costs.

All concur.

Judgment accordingly.