# In the Matter of the Estate of HERMANN SIELCKEN, Deceased.

Surrogate's Court, New York County, April 21, 1938.

*Lamar Hardy, United States Attorney for the Southern District of New York [David W. Wainhouse, Assistant United States Attorney, of counsel], for the petitioner.*

*Leonard B. Smith* and *Selden Bacon [Selden Bacon* of counsel]. for the Irving Trust Company, as executor, etc., respondent.

*I. Gainsburg,* for Clara Sielcken-Schwarz, respondent.

FOLEY, S. The Attorney-General of the United States, as successor to the Alien Property Custodian, moves for leave to intervene in the pending accounting proceeding of the Irving Trust Company, as executor of Hermann Sielcken. In addition, he asks leave to file objections to the account and prays for other relief incidental to the preservation of the rights of the Federal government.

The application is granted in its entirety. The present action of the Attorney-General appears to have arisen out of the evidence

developed in the very bitter litigation in a proceeding to vacate prior decrees of this court judicially settling the accounts of the executor. The widow of the decedent sought to reopen these decrees as a basis of attack upon the conduct of the executor. Her application was denied in my decision in *Matter of Sielcken* (162 Misc. 54). Herman Sielcken died in Germany in 1917 after the entrance of the United States into the World war. He had lived there for some years, although he apparently retained his American citizenship. His wife was the chief beneficiary and residuary legatee under his will. She had sojourned with her husband in Germany, was with him at the time of his death and came to America some months after the war terminated.

Pursuant to the powers conferred by the Trading with the Enemy Act and under the Executive Orders of the President, the Alien Property Custodian, as his delegate, several years ago made demands for the payment of certain individual property interests of Sielcken, his interest in the partnership of Crossman & Sielcken, wholesale coffee merchants, the interest of his wife in the estate of her husband and the further interest of such part of the property which might be transmitted from this country to Germany to the German executors appointed in the will. The provisions ·of the Trading with the Enemy Act applied not only to enemy aliens, but to citizens of the United States resident in enemy countries. (40 U. S. Stat. at Large, 411, chap. 106, § 2, as amd.; *Noble* v. *Great American Ins. Co.*, 200 App. Div. 773.) In 1921, Attorney-General Daugherty, under his powers, released any interest of the United States government in the estate generally, or in the legacy of the widow. He also permitted the payment to the estate of certain funds deposited with the custodian from the partnership assets.

The controversy between the executor and the widow in the proceeding for the vacatur of the decrees appears to have developed evidence as to the citizenship of Sielcken and as to the activities of him and his wife in their loyalty or disloyalty to our government immediately prior and subsequent to the declaration of war on April 6, 1917. These disclosures led to the recent demands by the Attorney-General of the United States as the successor of the Custodian. On August 25, 1935, general power had been granted to the Attorney-General by an executive order of the President to revoke or vacate any order issued in favor of any claimant in pursuance of section 9 of the Trading with the Enemy Act, which had been made or allowed without authority of law, or as a result of misrepresentations or fraud on the part of the claimant or a representative of the claimant, or by collusion with any officer or employee of the government. Authority to institute suit was

granted by that order to the Attorney-General. Further authority was granted "to do any other lawful act, deemed necessary by him, for the purpose of claiming or recovering moneys and property paid or delivered to any claimant." On January 6, 1938, the Attorney-General of the United States, under the grant of power contained in the executive order, by a formal instrument revoked the claims previously allowed by Attorney-General Daugherty in 1921 in respect of the estate and of the interest of the decedent in the liquidation of the partnership of Crossman & Sielcken and of the interest of the widow as beneficiary of the estate. By that instrument Attorney-General Cummings also vacated the previous order directing payment and releasing the property which had been made the subject of demand or seizure. The grounds of his action as stated in the instrument are that the previous allowance of the claims was "without authority of law or as a result of fraud and misrepresentation made by the claimants therein or by their authorized representatives, agents or attorneys."

Counsel for the executor appear to have taken inconsistent and contradictory positions in their brief. On the one hand, they state that they had no objection to the intervention of the Attorney-General or to his being permitted to file objections to the present account. On the other hand, they seek, in advance of the filing of the objections, to obtain permission from the surrogate to litigate in this court the validity of the action of the President in making the executive order of 1935, and the validity of the subsequent action of the Attorney-General in revoking the allowances of the claims and the orders permitting the relinquishment or return of the funds to the estate or to the widow. The latter contentions have no place in this court. These questions are justiciable only in the Federal courts.

In numerous decisions of the United States Supreme Court the status of the Alien Property Custodian and that of the Attorney-General, as his successor, have been defined and their power over the property or over an interest in property of a person classified as an enemy sustained. (*Central Union Trust Co.* v. *Garvan*, 254 U. S. 554; *Stoehr* v. *Wallace*, 255 id. 239; *United States* v. *Chemical Foundation, Inc.*, 272 id. 1; *Henkels* v. *Sutherland*, 271 id. 298; *Woodson* v. *Deutsche, etc.*, 292 id. 449; *Cummings* v. *Deutsche Bank*, 300 id. 115.)

In our own State there is similar finality in the recognition of the right of the Federal government to demand and seize through the executive order of the President, supplemented by the demand of the custodian, the property of enemies or those defined to be enemies by the Federal statutes. (*Miller* v. *Lautenburg*, 239 N. Y.

132; *Matter of Bendit*, 214 App. Div. 446; *Noble* v. *Great American Ins. Co.*, 200 id. 773; *Rothbarth* v. *Herzfeld*, 179 id. 865; affd., 223 N. Y. 578; *Matter of Schaefer*, 112 Misc. 303.)

The status of the custodian has likewise been definitely fixed by our courts. The mere demand of the delegate of the President made pursuant to the Trading with the Enemy Act is sufficient to give him a status as a person interested in an estate with complete possession of the legal and equitable rights of the enemy beneficiary. " The determination by the delegate of the President that the property is enemy owned has the same force as a like determination by the President himself. The determination, though not conclusive, has *prima facie* a validity that suffices to sustain a transfer of possession." (CARDOZO, J., in *Miller* v. *Lautenberg, supra*, p. 136.) If the determination is challenged as erroneous it may be contested and restitution sought by claim and suit in the appropriate Federal court under the provisions of the Trading with the Enemy Act and its amendments. (*Central Union Trust Co.* v. *Garvan, supra*, p. 567; *Cummings* v. *Deutsche Bank*, 300 U. S. 115.)

While it is not material here, because of my determination that this court has no jurisdiction to inquire into the legality of the order of the Attorney-General revoking the prior allowance of claims, it should be noted that the power of the Attorney-General to so act was sustained by the United States Court of Appeals for the District of Columbia in *Cummings* v. *Societe Suisse* (85 F. [2d] 287).

To clarify, therefore, the issues, present and prospective, in the pending proceeding I hold that this court may not inquire into (a) the validity of the executive order of the President or the legality of the demand of the Alien Property Custodian or his successor, the Attorney-General, or (b) the circumstances which led the Alien Property Custodian or his successor to designate the person as an enemy, or (c) the nature of that person's conduct and whether treasonable or otherwise, or (d) the question raised by counsel for the executor as to whether fraud or misrepresentation actually led to the relinquishment by the Attorney-General in 1921 of the rights of the government in the estate or in its assets or in the interest of Mrs. Sielcken as a residuary legatee. If the executor or the widow seeks to attack the legality of any of the acts of which they now complain, they must resort to a Federal forum. (*People* v. *Hillman*, 246 N. Y. 467, 481; *Matter of Smathers*, 249 App. Div. 523.)

The Attorney-General will be granted until May 23, 1938, to serve and file objections to the account. The contentions of counsel for the executor as to the possible forms such objections may take, must be disregarded. It would be futile to speculate on the nature

of these objections until they are filed. One of these contentions relates to the rights of the assignees of the widow of the funds on deposit with the Chase National Bank under the so-called letter agreement between the executor and the bank dated February 3, 1931, by which certain funds of the estate were paid out by the executor for the account of the widow, but with provision for safe-keeping and return to the corporate executor for reimbursement by it for estate obligations. If that question be raised by the objections, the rights of the assignees to share in the fund, as alleged innocent transferees, will not be tried and determined by the surrogate. The assignees will have to proceed as claimants against the Attorney-General under section 9 (a) of the Trading with the Enemy Act and if their claims are disallowed, they must resort to the form of action, authorized by the section, in the proper Federal court. (*Cummings* v. *Deutsche Bank, supra,* p. 122.)

I specifically hold, however, that the funds or securities in the possession of the Chase National Bank are within the jurisdiction of this court and may be made the subject of a provision in the decree settling the account, of a direction for repayment if a legal basis for such a direction be established. Under the provisions of section 267 of the Surrogate's Court Act if " any person interested in an estate has received estate assets in excess of the amount determined on the settlement of the account to be lawfully due him the surrogate shall have power to direct in the decree repayment by him of such excess to the representative of the estate or otherwise as justice may require."

It should be noted that the Attorney-General in his brief specifically disclaims any attempt to question the jurisdiction of this court to fix the reasonable administration expenses allowable by the surrogate.

The further contention of counsel for the executor that the decrees of this court of July 7, 1921, and July 11, 1922, are generally conclusive upon the Alien Property Custodian because of his participation in the accounting proceedings terminated by those decrees, is likewise overruled. They constitute a special bar upon any question which might have been raised as to items of the accounts but they do not constitute an estoppel and are not *res adjudicata* as against the present claim asserted by the Attorney-General that the release and relinquishment of the rights of the government were procured by the fraud and misrepresentation of the claimants.

Submit order on notice accordingly.