In the Matter of the Estate of GIOVANNI ROSA, Also Known as JOHN ROSE, Deceased.

Surrogate's Court, New York County, November 25, 1939.

*Joseph A. Cox,* for the public administrator, petitioner.

*John T. Cahill, United States Attorney [Jerome H. Doran, Assistant United States Attorney,* of counsel], for the United States of America, claimant.

*Fowler, Kowalczyk & Morris,* for Fred A. Heintz, creditor.

*John J. Bennett, Jr., Attorney-General [Watson B. Berry, Assistant Attorney-General,* of counsel], for the Department of Mental Hygiene.

*Hardin, Hess & Eder [Monroe Collenburg* of counsel], for the Royal Consul General of Italy, on behalf of Maria B. Rosa, widow.

FOLEY, S. In this contested accounting proceeding the government of the United States asserts a claim against the estate for the recovery of moneys paid to the decedent under a determination made by the head of the Veterans' Administration that such moneys were paid under a mistake of fact and of law. In so far as it appears from the proceeding the funds now in the estate represent part of such payments and income earned upon them. The decedent had no independent property.

The basis of the determination of General Hines as Administrator of Veterans' Affairs is that the decedent was never a member of the military forces of the United States during the World war. The case arose out of the mistaken identity of the decedent. In September, 1918, he was arrested by the police in Bronxville, N. Y., as a deserter from the United States service. He was turned over to the authorities at Ft. Slocum, N. Y. His alleged desertion (mistakenly assumed by the military authorities) was condoned and he was given the status of a soldier in the army. Shortly afterwards he was found to be suffering from dementia præcox. He was adjudged an incompetent and sent to a State hospital for mental diseases. He was then honorably discharged from the service. From that time on and for a period of several years up to June 30, 1933, the government paid his committee compensation as a disabled veteran and the amount of the soldier's bonus aggregating over $9,000. His wife, a resident of Italy, was also paid apportioned compensation which totaled an additional $8,000. The government authorities some time just prior to June 30, 1933, discovered the mistake and the Administrator of Veterans' Affairs then made his decision based upon findings that the decedent had never served in the United States army or navy, and that the issuance of his discharge from the army was an error. He further found that the decedent had never been disabled by reason of any injury or disease incurred in active military service and that any award to him upon that theory was erroneous. Determination was made that the amounts paid to him and his wife " were erroneous and unlawful payments " and were made as a result of mistakes of law and fact. Direction was made that the payments be recovered.

The attorneys for the Italian Consul General, representing his nationals, the widow and son of the decedent who are the distributees of the estate, seek to review in this court the validity and regularity of the action of the administrator in making his decision. They would have the surrogate pass upon the question of the identity of the decedent as a soldier who actually enlisted or was drafted or his actual military service. They also attack the decision of the

Administrator as being preliminary and not final. They claim it was based upon no evidence, and was made without opportunity for hearing or for the submission of evidence on behalf of the estate or the persons interested in it. All of these contentions are overruled as without merit and without foundation in law.

The surrogate holds that the decision of General Hines as the Administrator of Veterans' Affairs is controlling upon the validity and allowance of the claim against the estate here. (U. S. Code, tit. 38, § 705.) Under the latter statute, " All decisions rendered by the Administrator of Veterans' Affairs under the provisions of sections 701 to 721 of this title * * * shall be final and conclusive on all questions of law and fact, and no other official or court of the United States shall have jurisdiction to review by mandamus or otherwise any such decision."

There is no foundation for the argument that the terms of the section just quoted limit the jurisdiction of the Administrator solely to the denial of an application for compensation to a veteran. The section comprehends a wider jurisdiction and finality is also given to the decision for recovery or restitution where the moneys have been actually paid. A similar situation was ruled upon in *United States* v. *Mroch* (88 F. [2d] 888, 890). There a prior determination was amended. A new determination was made, retroactive in effect, that the veteran's stepchildren had never been members of his household and were not entitled to compensation and that all benefits previously paid on their account had been paid through error. The court held under the original and amendatory acts that no judicial review of the award of the Veterans' Administration could be had even if they were " wholly unsupported by evidence, wholly dependent upon a question of law, or clearly arbitrary or capricious." The amendment of 1933, with the new form of section 705, thus made the decision of the Administrator final and conclusive with a specific prohibition against any review by the Federal courts. (*Smith* v. *United States*, 83 F. [2d] 631, 638, 639.) The absurdity of the State courts attempting to interfere in a field where the Federal courts have been precluded is plain.

Questions involving the determination of the Federal departments made final and conclusive by Federal statutes are not justiciable in the courts of this State. (*Matter of Sielcken*, 167 Misc. 327; *Miller* v. *Lautenburg*, 239 N. Y. 132; *Matter of Smathers*, 249 App. Div. 523; *Matter of Gellatly*, N. Y. L. J. Jan. 16, 1939, p. 228; affd., 258 App. Div. 712.)

In *Matter of Sielcken* (*supra*) I held that the demand of the Attorney-General of the United States made pursuant to the

executive order of the President in a case involving an alleged alien enemy under the Trading with the Enemy Act was conclusive upon this court. The validity of the demand or the executive order could not be litigated in the Surrogate's Court.

In *Matter of Gellaily (supra)* the Federal government asserted a claim for income taxes. The estate attempted to set up a counter-claim for several million dollars based upon a transaction had by the decedent in his lifetime with the Smithsonian Institute. The latter controversy was held to be justiciable only in the Federal courts. It could not be litigated in this court. My decision was affirmed by the Appellate Division (258 App. Div. 712).

Under the equitable jurisdiction of this court in an accounting proceeding I hold that there is a valid basis for the recovery of the moneys paid under a mistake of fact and of law. (*Wisconsin Central R. R.* v. *United States*, 164 U. S. 190, 210, 211; *Wilber National Bank* v. *United States*, 294 id. 120, 123; *McElrath* v. *United States*, 102 id. 426; *Whiteside* v. *United States*, 93 id. 247.) It is undisputed that the funds remaining in the estate are the proceeds of the government payments. The government is never estopped by the acts of its agents in entering into an arrangement which " the law does not sanction or permit." (*Cummings* v. *Societe Suisse, etc.*, 85 F. [2d] 287.)

The amount of the claim as allowed will exhaust the balance of the estate and neither the general creditors nor the distributees are entitled to participation in the present assets.

Submit decree on notice settling the account accordingly.