CLARK, Atty. Gen. v. TIBBETTS.

No. 167, Docket 20861.

Circuit Court of Appeals, Second Circuit.

April 7, 1948.

398

Murray D. Welch, of New York City (George A. Dickinson, of New York City, on the brief), for defendants-appellants.

David E. Feller, Atty., Dept. of Justice, of Washington, D. C. (David L. Bazelon, Asst. Atty. Gen., John F. X. McGohey, U. S. Atty., of New York City, and Max Isenbergh, Sp. Asst. to Atty. Gen., on the brief), for plaintiff-appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This appeal attacks first the jurisdiction and power of the district court to make the declaration it did of rights of the Alien Property Custodian in property originally owned by Mary Martha Taylor, deceased, and second the correctness and propriety of the declaration made. The issues arise because Mrs. Taylor attempted to make provision for her daughter, Martha Sakrausky, and the latter's issue, through the device of an outright gift by will to a legatee who by prior secret agreement had agreed to dispose of it for the daughter's benefit as the mother had directed. Though the record does not so state explicitly, we are told in the briefs that Mrs. Sakrausky was an illegitimate child of Mrs. Taylor and the latter resorted to this device in order to make provision for the daughter at her

death without disclosing this relationship.[1] In this, of course, she has been ultimately unsuccessful, due to a series of unforeseen events which have brought about the disclosure and have produced some interesting legal problems. For the legatee taking the gift died about a month after the testatrix, before he had had opportunity to execute the agreement; and the Custodian by two orders has vested in himself all the interest of Mrs. Sakrausky and her issue in both the original owner's and the legatee's estates on the ground that these ultimate takers are enemy aliens.[2] This action was brought because the representatives of these estates refused to honor the demand of the Custodian for delivery of the property.

The pertinent and decisive facts are set forth in the pleadings and are not in dispute. We must start with the agreement executed by Mrs. Taylor on January 14, 1932, with her attorneys, Harland B. Tibbetts, George F. Lewis, Robert C. Rand, and Murray D. Welch, wherein she made provision for her daughter. This is a carefully drawn legal document covering almost all contingencies—save the one in issue. Its introductory paragraphs set forth that Mrs. Taylor had that day executed her last will and testament wherein she bequeathed and devised certain described properties to one of the parties of the second part, and that such bequests and devises had been made on the understanding that they would be disposed of by the party receiving them in accordance with the terms of the agreement. Then followed these specific terms. The parties of the second part agreed that the properties so received "shall be used for the benefit of Martha Sakrausky and/or her children, in the manner, to the extent and upon the conditions hereinafter expressed." The one receiving the properties was to have absolute discretion in paying or delivering them outright to Martha Sakrausky or her children or both, or in creating trust funds for their benefit, or in using the properties in any other manner for their benefit. If, however, he determined to create a trust, then he might, in his discretion, provide for a remainder to charity if Martha Sakrausky and her children died prior to the termination of such trust leaving no issue.

The agreement also contained an in terrorem clause to the effect that Martha Sakrausky and her children would lose all their rights under it if she, or any one on her behalf, contested the probate of the will, challenged the validity or effectiveness of any part of it, or made any claim or demand "based upon any alleged blood relationship between the said Martha Sakrausky and" Mrs. Taylor; in that event, the party receiving the properties would be authorized to pay over the proceeds to such educational, religious, or charitable institutions as he might select. Further it was stated that Mrs. Taylor might at any time alter her will by the execution of a new will, but the obligations assumed by the parties of the second part should continue in full force unless abrogated or modified by written agreement between the parties. Finally, it was provided that if any bequest or devise to one of the parties of the second part "should be rendered illegal, invalid or void by reason of any of the provisions of this agreement," then the person receiving such property should pay it over absolutely to Martha Sakrausky, or if she were dead, to her issue, or if she died leaving no issue, to an educational, charitable, or religious institution selected by him.

Mrs. Taylor died on June 2, 1943. Her will, executed on June 2, 1941, was admitted to probate in the Surrogate's Court of Westchester County on November 15, 1943. By it, she nominated Harland B. Tibbetts and the New York Trust Company as her executors; and if Tibbetts failed to qualify, then she named George F. Lewis in his stead. The Trust Company renounced and Tibbetts died on July 6, 1943. Hence

---

[1] The pleadings show that a like provision was made for another daughter, but nothing concerning that is in issue in this action.

[2] The defendants have denied this ground and have alleged that "the children of Martha Sakrausky are of Czechoslovakian nationality and are not enemy aliens." In their brief they say that Mrs. Sakrausky was born in Prague in 1889, that she was in Austria in 1938 when Germany took over Austria, and that her two children are of Czechoslovakian nationality. This is in support of a claim that legally all are still American citizens.

letters testamentary were issued to the defendant George F. Lewis as her sole executor. Tibbetts' will was probated on July 20, 1943, with letters testamentary being issued to his widow, defendant Florence G. Tibbetts.

Mrs. Taylor's will contained separate bequests and devises "absolutely unto the said Harland B. Tibbetts, if he shall survive me; or if he shall predecease me, then unto the said George F. Lewis * * *." The properties so given were those referred to in the 1932 agreement. But the agreement contained no specific provisions declaring Mrs. Taylor's intentions if the party receiving the properties under the agreement by virtue of surviving her should nevertheless die before entering on the performance of its terms. Actually, as we have seen, Tibbetts survived Mrs. Taylor, but died even before her will had been probated. Under the terms of the will his taking seems clear, however. Indeed, the Surrogate's Court of Westchester County so ruled. The complaint herein shows that Lewis, as executor of Mrs. Taylor's estate, began proceedings in February, 1944, in the Surrogate's Court for a construction of her will and the 1932 agreement. In his petition (which is attached to defendants' answer) Lewis alleged that the legacies were made so that the properties would be administered in accordance with the earlier agreement, and that, since Tibbetts died prior to the performance thereof, the properties should be paid by Lewis as executor to himself as legatee subject to the terms of the agreement. He also submitted an affidavit by Florence G. Tibbetts (also attached to defendants' answer) specifically waiving her right to claim any of the legacies made her husband under Mrs. Taylor's will and joining in the prayer for relief contained in Lewis' petition. Nevertheless, the surrogate held, in an opinion filed in April, 1944, that the language of the will was clear and unambiguous, that under the circumstances there was "no authority for the receipt of the proffered extrinsic evidence," and that the "named legatee, or his estate, enjoys an absolute gift which cannot be taken away or diminished by reason of the provisions of such agreements. Petitioner, as executor, has no alternative but to carry out the clear testamentary directions." And the order entered on May 8, 1944, reiterated that "the Court is without authority to receive the proffered extrinsic evidence consisting of two certain inter vivos agreements executed by the testatrix and others prior to the date of the will of the deceased."

Plaintiff's vesting orders against Mrs. Sakrausky and her issue were made on November 26, 1945, and this action was instituted March 15, 1946. Plaintiff, asking generally for a definition of his rights as successor to the Sakrausky interests, sought specifically a direction that a constructive trust either in his favor or in favor of Mrs. Taylor's estate be impressed upon all the moneys and properties received from her estate by the Tibbetts estate or executrix. He also asked for such other relief as may be deemed just and equitable. Defendants Tibbetts and Lewis, representing their estates, filed a lengthy answer with many defenses and attached exhibits raising the issues which are discussed below. In addition to these separate legal points, they urged generally that they have discretionary and fiduciary obligations to see that Mrs. Taylor's wishes are carried out. The Attorney General of the State of New York, who had been joined as a party defendant because of possible claims which might be made by undetermined educational, religious, or charitable institutions, filed an answer praying for the protection of the rights of such unknown beneficiaries under the 1932 agreement. Thereafter plaintiff moved for judgment on the pleadings. Federal Rules of Civil Procedure, rule 12(c), 28 U.S.C.A. following section 723c. The district court granted the motion and entered judgment that the property subject to the 1932 agreement is "impressed with a constructive trust" in plaintiff's favor, subject to such deductions for taxes, debts, and expenses of administration as might properly be allowed by the Westchester County Surrogate's Court and any other court "having jurisdiction in the premises." It also stated that plaintiff was entitled "to the transfer, conveyance and payment of the same" and retained jurisdiction for the purpose of entering orders necessary to secure its enforcement. In the appeal taken

by the two executors the state Attorney General has not joined.

1. *Jurisdiction.* The attack made on the court's jurisdiction centers first on the right of the Custodian to secure a declaration of his rights in specific property and second on a claim of interference with the state Surrogate's Court and disregard of the latter's decrees. The first point is narrow. Conceding, as indeed they must, that under his statutory powers the Custodian may reduce to possession any right he actually has in Sakrausky funds,[3] nevertheless they assert that all questions as to title or extent of the Custodian's interest must be raised by action of a claimant in making and pursuing his claim under § 9(a) of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 9(a). They draw support from the provisions of § 7(c), that "the sole relief and remedy of any person having any claim" to property seized or taken by the Custodian shall be as provided in the Act, and from those of § 17, describing the jurisdiction of the district court as that necessary and proper to enforce the provisions of the Act. On the face of it, this seems an extensive claim. For the limitations are in terms directed not against the Custodian or the United States or the broad grant of original jurisdiction over suits by the United States or its officers made by § 24(1) of the Judicial Code, 28 U.S.C.A. § 41(1), but only against claimants. Such persons are making claims against the sovereign and must therefore do it within the terms of the consent to suit which has been granted. Such, indeed, is the well-settled construction of these sections.[4] They go no further.

But, in any event, the question is now set thoroughly at rest by the decision in Markham v. Allen, 326 U.S. 490, 496, 66 S.Ct. 296, 299, 90 L.Ed. 256, which, although relied on by plaintiff, is not cited or discussed by the defendants. Here the Supreme Court reversed a decision below to hold that a district court should entertain an action by the Custodian to determine his right to share in a decedent's estate in course of probate administration in a state court, even though the suit involved issues of state law. It said that, although the court had jurisdiction under the cited provision of the Judicial Code, irrespective of § 17 of the Act, "the latter section plainly indicates that Congress has adopted the policy of permitting the Custodian to proceed in the district courts to enforce his rights under the Act, whether they depend on state or federal law." The further history of this case is a striking demonstration of the power. For on remand the lower court entered a judgment on the merits; and this the Supreme Court carefully reviewed on the merits and reversed in part and affirmed in part in Clark v. Allen, 331 U.S. 503, 67 S.Ct. 1431. Hence here the jurisdiction, based not only on these provisions, but also on the existence of an actual controversy within the meaning of the Declaratory Judgments Act, 28 U.S.C.A. § 400, is ample to support the adjudication of the Custodian's rights in the premises.

The contention that there is an improper interference with state jurisdiction is also answered by Markham v. Allen, supra. In that case the Court was careful to point out that the rights of the Custodian might be declared without interference with the state administration of the estate there involved, and hence the district court should properly proceed to pass upon the merits of the claims of title. We have just had occasion to consider the question of the extent of jurisdiction of the New York Surrogate's Court and have pointed out the concurrent authority of the district court in its diversity jurisdiction with the New York supreme court. Sullivan v. Title Guarantee

---

[3] Central Union Trust Co. of New York v. Garvan, 254 U.S. 554, 41 S.Ct. 214, 65 L.Ed. 403; Stoehr v. Wallace, 255 U.S. 239, 41 S.Ct. 293, 65 L.Ed. 304; Commerical Trust Co. of New Jersey v. Miller, 262 U.S. 51, 43 S.Ct. 486, 67 L.Ed. 858.

[4] Uebersee Finanz-Korporation, A. G. v. Markham, 81 U.S.App.D.C. 284, 158 F.2d 313, 314, affirmed sub nom. Clark v. Uebersee Finanz-Korporation, 332 U.S. 480, 68 S.Ct. 174; Pflueger v. United States, 73 App.D.C. 364, 121 F.2d 732, certiorari denied 314 U.S. 617, 62 S.Ct. 98, 86 L.Ed. 497; Sigg-Fehr v. White, 52 App.D.C. 215, 285 F. 949. See also Becker Steel Co. of America v. Cummings, 296 U.S. 74, 56 S.Ct. 15, 80 L.Ed. 54; Kahn v. Garvan, D.C.S.D.N.Y., 263 F. 909.

and Trust Co., 2 Cir., 167 F.2d 393. As a matter of fact, our present case does not present as much of a problem as did the two cases cited, for here not only did the judgment carefully avoid any interference with matters properly before the Surrogate's Court, but also it appeared that the surrogate had rejected, as not before him on the issue of probate, the very issue the district court was called upon to decide. The surrogate makes it quite clear that his power and duty was to see to the execution of the will and that he was without authority to determine the effect of inter vivos agreements or trusts. Sullivan v. Title Guarantee and Trust Co., supra; In re Lyon's Ex'rs, 266 N.Y. 219, 194 N.E. 682; In re Keleman's Will, 126 N.Y. 73, 26 N.E. 968.[5] This also answers the claim of res judicata based upon the surrogate's order. Fairchild v. Edson, 154 N.Y. 199, 48 N.E. 541, 61 Am.St.Rep. 609, reargument denied 154 N.Y. 768, 49 N.E. 1096.

2. *The merits of the adjudication.* The district court held that the properties were impressed with a constructive trust in favor of the plaintiff, who had succeeded to the rights of Martha Sakrausky and her issue. With this we agree. Sec. 186 of Restatement, Restitution, 1937, reads: "Where a testator devises or bequeaths property to a person relying upon his agreement to hold the property in trust for or to convey it to a third person, the devisee or legatee holds the property upon a constructive trust for the third person." To the same effect is Restatement, Trusts, 1935, § 55. That this is the law in New York is clear. Amherst College v. Ritch, 151 N.Y. 282, 323-325, 45 N.E. 876, 37 L.R.A. 305; Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 386, 122 N.E. 378. But defendants argue that no constructive trust should arise, since there is no showing of wrongful conduct on the part of Tibbetts or the executrix of his estate. We think this errs in limiting the constructive trust as a remedy to those cases where fraud is shown. The reason for the imposition of the constructive trust here is that if such were

not done then the person to whom the properties were given would be unjustly enriched. It is to prevent the possibility of such unjust enrichment that the trust is impressed upon the properties. Restatement, Restitution, 1937, § 160; see also id. § 186, comment b. The imposition of such a trust prevents any retention that would constitute unjust enrichment and achieves this objective through the force of judicial sanction, rather than by merely moral suasion alone.

As a matter of fact, the result would be substantially the same, as the Custodian points out, if the property were held to be subject to an unexecuted express trust, as the district judge was first inclined to hold. For then by N.Y. Personal Property Law, Consol.Laws, c. 41, § 20, and N.Y. Real Property Law, Consol.Laws, c. 50, § 111, the trust estate would vest in the state supreme court. In Sullivan v. Title Guarantee and Trust Co., supra, we held that the district court in a case of appropriate jurisdiction could exercise the functions of the state supreme court. But since in any event the trust would be now a dry or passive one, the beneficiary would be entitled to take directly. N.Y. Real Property Law, § 93; In re Edson, 38 App.Div. 19, 21, 56 N.Y.S. 409, 411, affirmed 159 N.Y. 568, 54 N.E. 1092; Jacoby v. Jacoby, 188 N.Y. 124, 129, 80 N.E. 676. Such discretionary powers as were given to Mr. Tibbetts, the original trustee, lapsed upon his death and did not pass to his executrix. See People v. Powers, 147 N.Y. 104, 41 N.E. 432, 35 L.R.A. 502. Nor could they pass either to Lewis or to Welch, who were named in the will and the agreement to take successively in the event that the original taker or takers predeceased the testatrix. Whether or not she might have wished them to take in the contingency which has arisen, we cannot rewrite her explicit provisions now. Hence, under the statute, the powers must be considered as executed for the benefit equally of the persons who are beneficiaries of the trust. N.Y. Real Property Law, § 160; cf. Cutting v. Cutting, 86 N.Y. 522, 530;

---

[5] Compare the different situation in Re Buehler's Estate, 186 Misc. 306, 59 N.Y.S.2d 766, affirmed 272 App.Div. 757, 70 N.Y.S.2d 139, where the surrogate actually did take jurisdiction; the claim was, however, against the decedent as constructive trustee and thus affected the settlement of her estate.

Holland v. Alcock, 108 N.Y. 312, 321, 16 N.E. 305, 2 Am.St.Rep. 420. Since obviously and by concession Tibbetts did not take beneficially, the defendants' argument cannot prevail on either theory, though the first, that of the constructive trust, is the one indicated by the New York precedents.

The other major argument made by defendants on the merits is that testimony should have been taken by the court below to ascertain whether or not the in terrorem clause should have been operative. They contend that if such is not done then those charitable or educational institutions that might benefit by the forfeiture clause would be precluded by the present judgment.[6] It seems clear, however, that the purpose of the clause was to impose forfeiture as a deterrent to Mrs. Sakrausky. Indeed the very provisions of the clause are directed to her. In fact, however, the relationship was made a matter of record by the defendants themselves in the proceeding in the Surrogate's Court; and the 1932 agreement was annexed to their petition there. It would be an absurdity for those who first disclosed the relationship to invoke the clause against the Custodian because of such a disclosure. There are other strong reasons that lead us to reject defendants' argument. The Custodian is neither attacking the validity of Mrs. Taylor's will nor making any claim based on the relationship between her and Mrs. Sakrausky. Instead his claim rests on the carrying out of her will and the 1932 agreement. Again, the clause in question specifically provides that the right to declare a forfeiture rests in the party receiving the property under the will. The Surrogate's Court has already determined that under the will Tibbetts took absolutely; and hence only he could have declared the forfeiture. Since he died without exercising such a right, no occasion for such a declaration can arise.

Defendants also assert that the pleadings presented certain material issues of fact sufficient to prevent a judgment upon them—as to Mrs. Taylor's intent with respect to the passing of the discretion vested in Tibbetts in the event of his death after hers and with respect to the choice of charities in the event of application of the in terrorem clause, and further as to the nationality of Mrs. Sakrausky and her children. The first two issues have become academic on the views we have stated above; moreover, under New York law, oral testimony as to Mrs. Taylor's intent would not be admissible. Dwight v. Fancher, 245 N.Y. 71, 156 N.E. 186, reargument denied 245 N.Y. 565, 157 N.E. 859; In re Smith's Will, 254 N.Y. 283, 172 N.E. 499, 72 A.L.R. 867. So far as the nationality of the Sakrauskys is concerned, that is not an issue in the present action. It is well settled that so far as concerns the seizure of property, the finding of the Custodian as to nationality is conclusive.[7] Beyond this, all claimants are given the remedy under § 9(a) of the Act, which we have discussed above; neither Mrs. Sakrausky nor her children are prevented by this action against different parties from pursuing their statutory remedy. This indeed the district court was at pains to point out.

Finally the court was correct in concluding that the properties in question were to be held equally for Mrs. Sakrausky and her issue. This is required under the provisions of N. Y. Real Property Law, § 160, which we have set forth above.

Affirmed.

6 The Custodian states that this argument was not made in the court below and is advanced for the first time here. We have no way of ascertaining the facts as to this other than to note that all the issues involved, including the terms of the forfeiture clause, were spread upon the record for all to see and for the court to interpret correctly; consequently we think we should examine the issue. Joint Council Dining Car Emp. Local 370 v. Delaware, L. & W. R. Co., 2 Cir., 157 F.2d 417, 420; Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037.

7 Central Union Trust Co. of New York v. Garvan, supra note 3; Stoehr v. Wallace, supra note 3; Commercial Trust Co. of New Jersey v. Miller, supra note 3; In re Yokohama Specie Bank, 188 Misc. 137, 66 N.Y.S.2d 289; Stern v. Newton, 180 Misc. 241, 39 N.Y.S.2d 593; In re Sielcken's Estate, 167 Misc. 327, 3 N.Y.S.2d 793.