THE ASSOCIATES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 62433.   Promulgated June 23, 1933.

*J. C. Peacock, Esq.,* for the petitioner.
*Frank A. Surine, Esq.,* for the respondent.

522

OPINION.

ARUNDELL: Petitioner claims exemption from tax on its income for 1929 under section 103 (9) of the Revenue Act of 1928, which provides for the exemption of:

Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder.

It is familiar law that a claim for exemption must be clearly made out by the claimant and where there is any doubt the construction must be in favor of the Government. Under other provisions of taxing statutes, similar to the one before us to the extent that they exempted associations " organized and operated exclusively " for designated purposes, it has been uniformly held that all of the tests of the statute must be met by the taxpayer. It is not enough that the claimant be organized for the purposes given statutory recognition; it must be so operated and to that end exclusively. *Herbert E. Fales*, 9 B.T.A. 828; *J. Noah H. Slee*, 15 B.T.A. 710; affd., 42 Fed. (2d) 184. Under the statute here it is a condition of the exemption that the club be " operated exclusively for * * * nonprofitable purposes."

The Supreme Court has not denied exemption to a corporation admittedly organized and operated exclusively for religious, benevolent, scientific, and educational purposes because of income from property used as a source of revenue for carrying on its work, or because of incidental profits realized (*Trinidad* v. *Sagrada Orden de Predicadores*, 263 U.S. 578), and similarly the Court has not allowed a technical formality, which permitted a charitable organization to enjoy income from a residuary estate before the time limited, to stand in the way of exemption. *Lederer* v. *Stockton*, 260 U.S. 3.

In the first mentioned case the Court took into consideration the "benefit which the public derives from corporate activities of the class named", and in the other case "the beneficent purpose of Congress" in allowing exemption to charitable organizations, in that case a hospital. The taxpayer before us cannot on any similar grounds lay claim to Congressional favor or any relaxation of the rule of strict construction. The exemption sought here comes under a separate and distinct provision of the statute. Petitioner's objective is not the bestowal of any benefit upon the public, but rather the advancement of the welfare of its own small group of members. We do not mean to intimate that petitioner is relying upon the cases we have cited from the Supreme Court reports, and we refer to them merely for the purpose of demonstrating that it is only in the case of a public benefactor that it might possibly be said that the rule is ever relaxed.

The respondent does not deny that petitioner was organized for the purposes set out in the statute. His argument is that in 1929 it was operated for profitable purposes, hence its activities went beyond those permitted. We think the position thus taken by the respondent is sound. Perhaps the mere conversion in 1929 of its railroad bonds into cash at a profit would not be enough to characterize its activities as engaged in for profit. But it went beyond that, and bought and sold other securities for substantial sums. Some time between October 24, 1928, and February 6, 1929, petitioner borrowed $21,225, and it is to be presumed that this loan was used to purchase the 1,000 shares of Simms Petroleum stock acquired on November 23, 1928. While the evidence does not directly establish that the borrowed funds were so used, it does appear that petitioner did not have sufficient funds of its own to make the purchase. If the borrowed money was not used for that purpose the burden was on the petitioner to show that fact. The Simms Petroleum stock was sold in 1929 at a profit of $8,121. On July 1, 1929, petitioner purchased stock of Consolidated Gas of New York for $64,562.50. The source of the funds for this purchase is not shown, but in the statement of its trustees of June 17, 1929, the only asset listed is cash in the amount of $35,844.54. This block of stock was sold in August of 1929 at a profit to the petitioner of $24,042.50. The record does not disclose the date of purchase of 2,000 shares of American Superpower and a like amount of Transcontinental Oil stock at an aggregate cost of $73,750. The stipulated facts show that petitioner did not own these stocks on October 11, 1929, and did own them on February 24, 1930. In this state of the record we assume the purchase to have been made in 1929.

From this review of petitioner's activities in 1929 we see that it did a substantial business in dealing in securities from which it reaped a sizable profit. In order to do so it liquidated the investments held at the beginning of the year and in addition borrowed money to carry on the business of buying and selling stocks. The facts in the case preclude any claim that the profits were merely incidental to the ownership of property. We are of the opinion, and so hold, that in 1929 petitioner engaged in buying and selling activities for the deliberate purpose of realizing a profit and thus lost the right to be classified as a club "operated exclusively for * * * nonprofitable purposes."

It was stipulated that petitioner "engages in social and recreational pursuits, including fishing, golf, tennis and other sports as well as cards and general good fellowship." Counsel for petitioner claims that this establishes the purposes for which it was operated. However, the stipulation does not say that petitioner's activities were exclusively those named, and the facts established show otherwise.

There is some argument by both parties as to whether earnings might inure to the benefit of any private shareholder. This might be important if the petitioner had been organized and operated exclusively for the specified purposes, but, holding as we do that it was not so operated, we think it unnecessary to go into this question. If, however, this is material, the evidence is on the respondent's side, it being shown that at one time petitioner distributed to its members "some of the accumulated funds of securities."

*Decision will be entered for the respondent.*