MARY duPONT FAULKNER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 92815. Promulgated April 18, 1940.

*Robert C. McKay, Esq.,* for the petitioner.
*Davis Haskin, Esq.,* for the respondent.

#### OPINION.

SMITH: This proceeding is for the redetermination of a deficiency of $2,262.56 in petitioner's gift tax for the year 1935. Petitioner alleges that the respondent erred in determining her net taxable gifts for 1935 in not allowing an exclusion of $5,000 for each of four gifts in

trust, one for the benefit of each of her three living children and the fourth for the benefit of an unborn child, and in not allowing the deduction of three $5,000 exclusions respecting a conveyance in trust by the petitioner of certain insurance policies on the life of her father for the benefit of two of her brothers and her sister. A further issue is raised as to the right of the petitioner to a deduction under section 505 (a) (2) (B) of the Revenue Act of 1932, as amended by section 517 (a) of the 1934 Act, for a gift of $6,000 to the Birth Control League of Massachusetts.

The facts are stipulated.

On December 30, 1935, the petitioner created four irrevocable trusts, one for the benefit of each of her three minor children and a fourth for her first child born after December 30, 1935. Securities of a value of $20,681.25 were conveyed to the trustee, the Wilmington Trust Co., for each of the trusts. Each trust agreement provided that the income of the trust should be paid to the beneficiary either at the request of James M. Faulkner, or, in the absence of any such request, at the discretion of the trustee, and that any income not so paid to the beneficiary should be invested and added to the principal of the trust fund. One-third of the principal of the trust fund was to be paid to the beneficiary at the age of 21 years, one-third at the age of 25 years, and the remaining third at the age of 30 years. The petitioner's first child born after December 30, 1935, was Charles S. Faulkner, born April 10, 1936.

On July 1, 1935, the petitioner, with others, created a trust transferring her interest in several life insurance policies on the life of her father, Lammot duPont, to the Wilmington Trust Co., trustee, for the benefit of her brothers, Reynolds duPont and David Flett duPont, and her sister, Alexandrine duPont. The value of the petitioner's interest in the insurance policies at the time of the transfer was $65,612.84. The trust instrument provided that after "settlement day", which was described as the day six months from the date of the death of Lammot duPont, the residue of the trust fund was to be divided into three equal parts, one for each of the three beneficiaries named. Thereafter, the income, and, in some instances, the principal, was to be paid to the beneficiaries.

In her gift tax return for 1935 the petitioner reported the gifts made under the trust instrument of December 30, 1935, at a value of $20,625 each but she did not report the gift of her interest in the insurance policies referred to above. She claimed four exclusions of $5,000 each in her return for the four separate gifts in trust to her three living children and her unborn child.

In his determination of the deficiency herein the respondent increased the value of each of the four gifts of December 30, 1935, from $20,625 to $20,681.25, which adjustment the petitioner does not

protest, and disallowed all of the four exclusions claimed in respect of such gifts on the ground that the gifts were of future interests against which no exclusions are allowable. Respondent also included in petitioner's gifts the value of her interest in the insurance policies on the life of Lammot duPont which she transferred in trust for her brothers and sister. The petitioner does not contest the inclusion of the value of her interest in the insurance policies in her gifts, but claims additional exclusions of $15,000, representing $5,000 for each beneficiary under this trust conveyance.

Also, in her gift tax return for 1935, the petitioner reported a gift of $6,000 to the Birth Control League of Massachusetts, with respect to which she claimed an exclusion of $5,000 and a deduction of $1,000. In his deficiency notice the respondent did not disallow either the $5,000 exclusion or the $1,000 deduction, but in an amended answer filed in this proceeding he asks that the deficiency be increased by such amount as would result from the inclusion in petitioner's taxable gifts of $1,000 of the total gift of $6,000.

The respondent concedes in his brief filed in this proceeding that the petitioner is entitled to four exclusions of $5,000 each for the gifts which she made by separate trust conveyances for the benefit of her four children. The concession was made in reliance upon the Board's decision in *Seymour H. Knox*, 36 B. T. A. 630, and other cited cases, wherein the Board and, in some cases, the courts have held that the exclusion of $5,000 is allowable to each trust and not to each beneficiary. We have held, however, in *Wilton Rubinstein*, 41 B. T. A. 220, following *Welch* v. *Davidson*, 102 Fed. (2d) 100; *Robertson* v. *Nee*, 105 Fed. (2d) 651; *Rheinstrom* v. *Commissioner*, 105 Fed. (2d) 642; and *McBrier* v. *Commissioner*, 108 Fed. (2d) 967, that the beneficiary and not the trust is the donee and that a $5,000 exclusion is allowable for each beneficiary.

Under the rule of the cases cited there is no doubt as to the petitioner's right to an exclusion of $5,000 for each of the three gifts in trust for her three minor children. However, as to the fourth gift of a like amount which the petitioner made for her unborn child, a more difficult question is presented. All four of the gifts were made on December 30, 1935. Was the gift in trust for "her first child born after December 30, 1935" a valid gift made in the year 1935 and, if so, was it a gift of a future interest within the meaning of section 504 (b) of the Revenue Act of 1932? The section of the statute referred to reads as follows:

SEC. 504. NET GIFTS.

\* \* \* \* \* \* \*

(b) GIFTS LESS THAN $5,000.—In the case of gifts (other than of future interests in property) made to any person by the donor during the calendar year, the first $5,000 of such gifts to such person shall not, for the purposes

of subsection (a), be included in the total amount of gifts made during such year.

A learned discussion of the legal status of an unborn child or a child "*en ventre sa mere*" is found in *Cooper* v. *Heatherton*, 65 App. Div. 561; 73 N. Y. S. 14, where it was said:

\* \* \* In *Long* v. *Blackhall*, 7 Term. R. 160, it was contended that the will violated the rule of the common law against perpetuities, in that the lives were not all in being when the testator died. Kenyon, Lord Chief Justice, held that a child *en ventre sa mere* was within the rule. In the famous case of *Thellusson* v. *Woodford*, 4 Ves. 227, Buller, J., at page 322 et seq., discusses the doctrine, comments upon the cases, and concludes:

"Why should not children *en ventre sa mere* be considered generally in existence? They are entitled to all the privileges of other persons. In this case it is enough to say that such child is capable of having an estate given to him, and consequently to another person for his life."

This decision is noticed by the chancellor in *Marsellis* v. *Thalhimer*, 2 Paige, 35, 21 Am. Dec. 66, where he says:

"That it may be considered in existence in some cases for the benefit of others may perhaps be admitted, as in the case mentioned by Buller, J., in *Thellusson* v. *Woodford*, 4 Ves. 323, of an estate given to a third person for the life of an infant *en ventre sa mere*."

In *Stedfast* v. *Nicoll*, 3 Johns. Cas. 18, Kent, J., notes "a late case" (*Doe* v. *Clarke*, 2 W. Bl. 400), where "the court go so far as to say that it is now settled that an infant *en ventre sa mere* shall be considered, generally speaking, as born, for all purposes for his own benefit. In that case, Chief Justice Eyre observed 'that an infant *en ventre sa mere* came clearly within the description of a child living at the time of his father's death.'" A note appended to *Stedfast* v. *Nicoll, supra,* by the famous reporter, William Johnson, comments upon the force and effect of the English decisions. In the report of *Thellusson* v. *Woodford*, 11 Ves. 112, the chief baron speaks of the extension of the rule to a child *en ventre sa mere* at the time of the father's death, because that contingency must necessarily happen within nine months after the death of a person in being, and therefore such construction would introduce no inconvenience. He also notes the case of *Doe* v. *Clarke*, 2 W. Bl. 399, referred to in the opinion of Kent, J., *supra*. And he seems to have adopted verbatim the language of Lord Chief Justice Willis in *Goodtitle* v. *Wood*, cited by the reporter in the note at the foot of the report of *Long* v. *Blackall*, 7 Term. R. 100, 1 Bl. (Cooley's Ed.) 180, says:

"An infant *en ventre sa mere*, or in the mother's womb, is supposed in law to be born, for many purposes. It is capable of having a legacy, or a surrender of a copyhold estate, made to it. It may have a guardian assigned to it, and it is enabled to have an estate limited to its use, and to take afterwards by such limitation, as if it were then actually born. And in this point the civil law agrees with ours."

4 Kent, Comm. 249, says:

"But the decision of the king's bench upon that point was reversed by the house of lords; and it is now the settled law in England and in this country that an infant *en ventre sa mere* is deemed to be *in esse*, for the purpose of taking a remainder, or any other estate or interest which is for his benefit, whether by descent, by devise, or under the statute of distributions."

\* \* \* \* \* \* \*

\* \* \* I am of opinion that the child *en ventre sa mere* at the testator's death, which was born alive and lived, may be regarded as a life in being at the time of the testator's death, within the purview of the statute. \* \* \*

In 9 Corpus Juris 140, it is stated that:

It is now settled, according to the dictates of common sense and humanity, that a child *en ventre sa mere*, for all purposes for his own benefit, is considered as absolutely born.

In *Folk* v. *Hughes*, 100 S. C. 220; 84 S. E. 713, it was held that a conveyance to A for the use of A and his children for A's life, with remainder over to A's children, gave a vested remainder interest to the unborn children of A. The court there said that "It is not necessary to the creation of a trust estate that the cestui que trust should be in existence at the time of its creation." See also Perry on Trusts, 7th ed., § 66.

Also, in *People* v. *Powers*, 147 N. Y. 104; 41 N. E. 432, it was said:

\* \* \* And. in order to create a valid trust, there must be a beneficiary or beneficiaries designated. It may not be necessary to name him. It will be sufficient if he is so designated or described that he can be identified. \* \* \*

The validity of a gift in trust for the benefit of an unborn child, such as the gift under consideration here, seems to be clearly established by the cited authorities. Such a gift might be of either a present interest or a future interest, depending upon the rights of the donee in the property conveyed. While the distinction between such gifts is not always readily discernible (see *Edwin Goodman*, 41 B. T. A. 472, there can be no doubt that there is a gift of a present interest where the donee acquires immediately the entire beneficial interest in the subject matter of the gift.

Such, we think, was the gift under consideration. The sole beneficiary of the trust, that is, the donee, was, in the language of the stipulation, the donor's "first child born after December 30, 1935", the date when the trust was created. Presumably these were the words that were actually employed in the trust instrument to describe the donee, although the trust instrument is not before us. In any event it was without doubt the donor's intention to make the gift to the child *en ventre sa mere* which was born to her a little over three months after the gift was made.

Anticipating the objection that the donee, in that event, was incapable of accepting the gift and that the gift was therefore invalid, it is only necessary to refer to the well recognized rule that the law presumes the acceptance by a donee of a gift wholly beneficial to the donee. See 28 Corpus Juris 672, ¶ 75, and cases cited in notes 72, 75, and 76.

The case of *Lloyd E. Wilson*, 41 B. T. A. 456, where it was held that an unborn child is not a "person" within the meaning of the statute for the purpose of computing the amount of credit for de-

pendents, is distinguishable from the instant case. The last paragraph of the opinion in that case reads as follows:

Nor is the fact that, by common law and generally by statute, a child *en ventre sa mere* is deemed to be *in esse* for the purpose of inheritance for its own benefit persuasive here. The credit here claimed is not for the benefit of the child but of the parents.

The gift here was wholly for the benefit of the unborn child. We think that it was a valid gift of a present interest as distinguished from a future interest. The statutory deduction of $5,000 in respect thereof is allowed.

As to petitioner's conveyance of her interest in the insurance policies on the life of her father in trust for the benefit of her two brothers and her sister, the respondent contends that the petitioner is entitled to only one exclusion of $5,000, there being a single trust, instead of the three exclusions which petitioner claims.

This issue is identical with the one recently determined by the Board, against the respondent's contentions, in *Wilton Rubinstein, supra*. We therefore hold that the petitioner is entitled to three exclusions, one for each beneficiary of the insurance trust.

This leaves for determination the question of the deduction, under section 505 (a) (2) (B) of the Revenue Act of 1932, as amended by section 517 (a) of the 1934 Act, of the $6,000 gift to the Birth Control League of Massachusetts. That section provides:

SEC. 505. DEDUCTIONS.

In computing net gifts for any calendar year there shall be allowed as deductions:

(a) RESIDENTS.—In the case of a citizen or resident—

    *      *      *      *      *      *      *

(2) CHARITABLE, ETC. GIFTS.—The amount of all gifts made during such year to or for the use of—

    *      *      *      *      *      *      *

(B) a corporation, or trust, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals; no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation.

The gift in question was made by the petitioner in December 1935.

The Birth Control League of Massachusetts, hereinafter sometimes referred to as the League, is an unincorporated association organized prior to the World War. It was inactive during the World War but was reorganized in February 1928. The objects for which it was organized are set forth in its constitution and bylaws as follows:

Section 1: to collect and correlate information regarding birth control.

Section 2: to educate the public in the social, economic, and scientific aspects of birth control.

Section 3: to enlist the support of the public and of lawyers, physicians, and legislators in effecting the liberalization or the repeal or amendment of the existing Massachusetts statutes pertaining to the prevention of conception.

Section 4: to sponsor the discoveries of the best contraceptive techniques and to sponsor the provision of instruction therein with the advice and under the supervision of the Medical Consultants of the Birth Control League of Massachusetts.

Section 5: to afford legal protection to physicians affiliated with the Birth Control League of Massachusetts giving contraceptive advice under the interpretation of the law accepted by the Birth Control League of Massachusetts.

Section 6: to provide advice pertaining to marital relations.

The principal activities of the League have consisted of organizing and maintaining mothers' health offices such as the Brookline Mothers' Health Office, in which physicians give contraceptive advice to sick married women unable to afford the fee of a private physician, who, for the most part, were referred to them by hospitals and various welfare agencies.

The petitioner in 1935 was a member of the executive committee of the League and was chairman of the mothers' health office committee. She had been associated with the Brookline Mothers' Health Office since its organization in 1932.

The mothers' health offices, sometimes referred to hereinafter as the health offices, were closely affiliated organizations sponsored by and partially financed by the League. There were three of the health offices in the State of Massachusetts in 1935, one in Brookline, one in Springfield, and one in Worcester. Others were later organized. The purpose of the health offices, as set forth in the pamphlet published by the Brookline Mothers' Health Office, was:

To provide an office under skilled medical direction, maintaining the highest medical standards, where contraceptive advice may be given to such women as are deemed eligible by the Committee of Supervising Physicians, in order to:

Preserve the life and health of mothers.
Prevent disease.
Decrease the number of abortions both therapeutic and self-induced.
Aid the patient in her marital life.
Improve the health of children by improving the health of their mothers.
Help patients to space pregnancies when medically indicated.

Only married women who needed advice for medical or mental reasons were accepted as patients at the health offices. In every case a complete medical and social history and a thorough physical examination were made before any advice or treatments were given. Most of the patients were referred to the health offices by civic agencies, hospitals, and physicians. Patients who were able to pay were charged a fee, but many of the patients were on relief rolls and less than half were charged any fee whatever. All of the health offices were supervised by committees of local physicians under the auspices of the medical consultants of the League.

Prior to 1935 the petitioner had made gifts direct to the mothers' health offices but had never made any substantial gifts to the League. In 1935, however, the campaign for funds for the League and the health offices was consolidated in certain areas, so that only one appeal would be made to the public for gifts, and in that year the petitioner made the $6,000 gift in question, with the understanding that the funds were to be used for the health offices only.

Early in 1935, or shortly before that time, the executive committee of the League decided to abandon the objects set forth in sections 3 and 5 of its constitution and bylaws quoted above, that is, those relating to legislative matters, and to limit its activities to the operation of the mothers' health offices. Formal amendment to the constitution and bylaws eliminating sections 3 and 5 was not made, however, until April 1937. In 1930 the League supported a bill called the "Doctor's Bill", the purpose of which was to change section 21 of chapter 272 of the General Laws of Massachusetts prohibiting, generally, the sale or distribution of contraceptive devices. The statute referred to reads in part as follows:

Sec. 21. Whosoever sells, lends, gives away, exhibits, or offers to sell, lend or give away * * * any drug, medicine, instrument or article whatever for the prevention of conception * * * or writes, prints or causes to be written or printed a card, circular, book, pamphlet, advertisement or notice of any kind stating when, where, how, of whom or by what means such article can be purchased or obtained * * * shall be punished by imprisonment in the state prison for not more than five years in jail or the house of correction for not more than two and one half years by a fine of not less than one hundred nor more than one thousand dollars.

In 1937 the Brookline Mothers' Health Office was closed by the police and in *Commonwealth* v. *Gardner*, 15 N. E. (2d) 222, decided May 26, 1938, the Supreme Court of Massachusetts held that the operation of that office was in violation of section 21 of chapter 272, quoted above.

Respondent's position is that the Birth Control League of Massachusetts was not organized and operated exclusively for the purposes set forth in section 505 (a) (2) (B) above. In *J. Noah H. Slee*, 15 B. T. A. 710; affd. (C. C. A., 2d Cir.), 42 Fed. (2d) 184, it was held that contributions to the American Birth Control League and the American Birth Control League, Inc., the former an unincorporated association and the latter a corporation organized under the laws of the State of New York, were not deductible under section 23 (o) of the Revenue Act of 1934, the provisions of which are substantially the same as those of section 505 (a) (2) (B) above. The basis for the disallowance of the deduction was that one of the chief purposes of the organizations, as declared in their certificates of incorporation or constitutions, was to distribute propaganda and influence legislation favorable to the policies for which they stood. The organiza-

tions were held, therefore, not to have been organized and operated exclusively for charitable purposes within the meaning of the statute.

In the instant case there were similar declarations in the constitution and bylaws of the League. The evidence is to the effect that these purposes, that is, to influence legislation, were abandoned at or about the time the petitioner made her gift to the League. However, the constitution and bylaws were not so amended until more than a year after that time.

There can be no doubt that the League was not "organized" exclusively for the purposes enumerated in section 505 (a) (2) (B) above, and therefore it fails to meet the requirements of the statute. See *Frederic C. Leubuscher, Executor*, 21 B. T. A. 1022; affirmed on this point, 54 Fed. (2d) 998. See also *Herbert E. Fales*, 9 B. T. A. 828; *The Associates*, 28 B. T. A. 521; *James J. Forstall*, 29 B. T. A. 428. In *Slee* v. *Commissioner, supra*, the court said:

\* \* \* Political agitation as such is outside the statute, however innocent the aim, though it adds nothing to dub it "propaganda," a polemical word used to decry the publicity of the other side. Controversies of that sort must be conducted without public subvention; the Treasury stands aside from them. \* \* \*

Petitioner makes the contention that her gift was not to the League itself, but to the mothers' health offices, which were separate organizations. It is quite plain from the evidence of record, however, that the health offices were inseparable from the League itself and were in fact mere adjuncts of the League. They operated in much the same manner as the clinics referred to in *Slee* v. *Commissioner, supra*.

Moreover, the activities of the mothers' health offices themselves were held by the Supreme Court of Massachusetts to be in violation of section 21 of chapter 272 of the General Laws of Massachusetts in *Commonwealth* v. *Gardner, supra*, and were closed by the police. In these circumstances we think that a gift to the health offices could not be allowed as a deduction under the provisions of the Federal statute. It would be contrary to public policy, if not directly contrary to the intention of Congress, to construe the Federal taxing statute as granting privileges to taxpayers which would lend encouragement to the support of activities inimical to the laws of the several states. See *Easton Tractor & Equipment Co.*, 35 B. T. A. 189, and cases therein cited.

We are of opinion that the gift does not fall within the deductions authorized by the statute.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MURDOCK and TURNER concur only in the result.

STERNHAGEN, DISNEY, HARRON, and OPPER dissent.