Andrea L. and Michael C.
CASSMAN, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 92–677T.

United States Court of Federal Claims.

April 28, 1994.

Larry V. Bishins, Ft. Lauderdale, FL, atty. of record, for plaintiffs. Randee S. Schatz, Palm Beach, FL, of counsel.

Stuart J. Bassin, Washington, DC, with whom were Michael L. Paup, Acting Asst. Atty. Gen., Mildred L. Seidman, Thomas D. Sykes, for defendant.

*OPINION*

ROBINSON, Judge.

Plaintiffs, Andrea L. and Michael C. Cassman, have brought suit under the Tucker Act, 28 U.S.C. § 1491 (1993), seeking a refund of $602 in taxes plus interest with respect to the 1991 tax year. Defendant opposes plaintiffs' claim, and both parties have moved for summary judgment.

The principal issue in this proceeding is before the Court of Federal Claims for the

first time. Plaintiffs claim to be entitled to a dependent exemption for the 1991 tax year under §§ 151 and 152 of the Internal Revenue Code of 1986 (I.R.C.), as amended, in respect of a child that was unborn as of the close of that year. For the reasons set forth below, the court holds that plaintiffs are not entitled to claim such an exemption. Accordingly, defendant's motion for summary judgment will be granted, and plaintiffs' cross-motion for summary judgment will be denied.

### Factual Background

Plaintiffs are residents of Ocean Park, Florida. On or about April 22, 1992, plaintiffs submitted to the Internal Revenue Service (I.R.S.) a Form 1040X, "Amended U.S. Individual Income Tax Return," claiming, on Line 6, an exemption of $2,150, and requesting a refund of $602 with respect to taxes paid for 1991. On Line 30, where taxpayers are to list "Dependents (children and other) not claimed on original return," plaintiffs did not identify any dependents, but in Part II ("Explanation of Changes to Income, Deductions and Credits") they claimed that on December 31, 1991, Mrs. Cassman was pregnant and, therefore, they were entitled to an exemption under §§ 151 and 152.

On July 24, 1992, Mrs. Cassman gave birth to a son, Jonathan, and on July 29 of the same year, the Florida Department of Health and Rehabilitative Services issued a birth certificate. The date of birth indicates that Mrs. Cassman became pregnant some time in October 1991 and that Jonathan Cassman was indeed *in utero* as of December 31, 1991.

In a letter dated August 18, 1992, the I.R.S. disallowed the refund, stating that an exemption cannot be claimed for an unborn child.

### Contentions of the Parties

Plaintiffs argue that §§ 151 and 152, as written, provide a dependent exemption for a taxpayer's child regardless of whether the child is born, and that Jonathan Cassman came within the definition of "dependent" set forth in those sections as of the moment of his conception. Defendant contends that a range of judicial, legislative, and administrative authorities demonstrates that the unborn

are not included as "dependents" under §§ 151 and 152.

### DISCUSSION

#### A. Summary Judgment.

Summary judgment is useful when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Only disputes over material facts, or facts that might significantly affect the outcome of the suit under the governing law, preclude an entry of judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

When the parties present cross-motions for summary judgment, the court is not required to grant judgment as a matter of law for either one side or the other. Each party's motion must be separately evaluated on its own merits, with care taken to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987). The parties to this suit have agreed that no material facts are in dispute. The primary issue presented, which concerns the availability of a dependent exemption for an unborn child, calls for a conclusion of law, which is appropriate for resolution by summary judgment.

#### B. Analysis.

Section 151 allows a taxpayer to take a "personal exemption" deduction when computing taxable income. The I.R.C. allows additional deductions to be taken with respect to each "dependent" of the taxpayer, provided that the dependent's taxable income does not exceed the exemption amount. § 151(c)(1)(A). However, if the dependent is a "child" of the taxpayer, the exemption may be taken regardless of the dependent's income, as long as the child is under 19 years of age or, if a full-time student, under 24 § 151(c)(1)(B). The exemption amount provided by § 151 is $2,000, adjusted for inflation for tax years beginning after 1988. In

1991, the tax year at issue in this case, the exemption amount was $2,150.

Section 152 defines "dependent" for the purposes of § 151. In pertinent part, § 152 provides:

(a) General Definition—[T]he term "dependent" means any of the following individuals over half of whose support for the calendar year ... was received from the taxpayer

. . . .

(1) a son or daughter of the taxpayer, or a descendant of either....

### 1. *Judicial Precedent.*

The last judicial authority to deal with the specific issue presented here was the United States Board of Tax Appeals, the predecessor of the United States Tax Court, in *Wilson v. Commissioner*, 41 B.T.A. 443, 1940 WL 212 (1940). The facts in that case were virtually identical to those in the present case. The taxpayers, California residents, had sought a declaration from the Board that their daughter, during the period prior to her birth, was a "person" under I.R.C. § 25(b)(2), which was the dependent exemption provision in effect prior to the 1954 Act.[1] The Board denied the relief, observing that "[t]he interpretation which petitioners suggest is so obviously strained as to merit little discussion." *Wilson*, 41 B.T.A. at 457, 1940 WL 212.

Plaintiffs urge this court to disregard the precedent set by the *Wilson* case, arguing that the law has changed significantly since 1940. Indeed, Congress in 1944 did repeal a requirement that taxpayers prorate their dependent deduction with respect to a child when that child was born or died during the tax year. Under § 25(b) of the pre–1944 Code, taxpayers had to determine an individual's status as a "dependent" as of July 1 of the tax year and take only half of the deduction if a child was not born or died before that date. Under the 1944 amendments and under the current § 152, a full dependent deduction may be taken even if an individual

had dependent status for only part of the year. *See also* Treas.Reg. § 1.152–1(b) (1991). Plaintiffs suggest that this change in law reflects a change in Congress's attitude vis-á-vis the issue of whether a child-dependent needs to be born as a prerequisite to claiming the exemption. However, plaintiffs have pointed to nothing in the legislative history to show that Congress intended the 1944 amendment to have any effect on the question that had come before the Board of Tax Appeals in *Wilson.* The most plausible explanation for the change, in fact, is that Congress intended to simplify the tax computation process; indeed, the enacted Individual Income Tax Act of 1944 was headed "An Act to provide for simplification of the individual income tax." Pub.L. No. 78–315, 58 Stat. 231.

Plaintiffs further urge the court to disregard the *Wilson* case because, they contend, the Board of Tax Appeals relied on a precedent of the California Supreme Court, *Daubert v. Western Meat Co.*, 139 Cal. 480, 73 P. 244 (1903), which plaintiffs argue is obsolete. In reading the word "person" as it then appeared in the definition of "dependent" under § 25(b)(2), the Board in *Wilson* concluded that:

The word "person" ... is to be taken in its normal, everyday sense of a living human being, a man, a woman, or child, an individual. In *Daubert* ... the court stated:

[W]here a child is unborn and its existence unknown to defendant at the time of the judgment in favor of the widow or other heirs is given, an action cannot be maintained by the child after its birth, and when it was only a part of her mother, and not a human being or person.

The interpretation [of § 25(b)(2)] which petitioners suggest is so obviously strained as to merit little discussion.

*Wilson*, 41 B.T.A. at 456–57, 1940 WL 212 (citations omitted).

This court does not need to reconsider the sensitive issues at stake in the *Daubert* case, nor is it necessary to decide whether that

---

1. The current codification of the dependent exemption at §§ 151 and 152 dates back to the    I.R.C. of 1954.

case is now obsolete. If either of these cases stands as an obstacle to plaintiffs' recovery, it is *Wilson*, not *Daubert*. As the passage cited above shows, the Board of Tax Appeals did not adopt the California precedent from *Daubert* to interpret the word "person." Instead, the Board in *Wilson* merely interpreted the word in its "everyday sense" and used the California precedent to demonstrate that the highest court in the petitioners' own home state had interpreted the word similarly.

Plaintiffs call the court's attention to a case decided by the Board of Tax Appeals later in the same year as *Wilson*. In *Faulkner v. Commissioner*, 41 B.T.A. 875, 1940 WL 250 (1940), a case which plaintiffs contend is in conflict with *Wilson*, the Board upheld a gift tax exclusion for a gift made in trust to an unborn child who was in the womb at the time of the donation. The Board based its conclusion on a substantial body of common-law and statutory precedent which established that an unborn child was to be treated as if already born for the purpose of protecting his or her own interests as a beneficiary to a trust. The gift tax exclusion in effect at that time, § 504(b) of the Internal Revenue Act of 1932, allowed a $5,000 exclusion for gifts "other than of future interests in property."[2] Having concluded, based upon an examination of common law precedent and statutes, that a child in the womb was considered to be in existence for the purpose of being a beneficiary to a trust, the Board in *Faulkner* held that the petitioner's conveyance to her unborn child was a "present interest" in property and, therefore, the deduction was allowed under § 504.

Plaintiffs ask the court to draw an analogy between the present case and the Board's granting of a gift-tax exclusion to the taxpayer in *Faulkner* for a gift made to an unborn child. The Board in *Faulkner* distinguished

that case from *Wilson*, where the same tribunal had said:

> Nor is the fact that, by common law and generally by statute, a child *en ventre sa mere* is deemed to be *in esse* for the purpose of inheritance for its own benefit persuasive here. The credit here claimed is not for the benefit of the child but of the parents.

*Wilson*, 41 B.T.A. at 457, 1940 WL 212. Because the Board in *Faulkner* declared that a gift in trust was for the benefit of the child, not the parent, and the tax benefit for the parent was allowed, plaintiffs now ask the court to read *Faulkner* as being in conflict with *Wilson* to the extent that both cases essentially involved the permissibility of a tax benefit in respect of an unborn child. Such a reading would be wrong. In the above-cited passage, the Board in *Wilson* was merely drawing a distinction between the I.R.C.'s dependent exemption and the general law of trusts and estates, to make the point that the latter law was irrelevant to the former. That distinction would have been inappropriate in *Faulkner*—a case involving a gift in trust. The two cases, therefore, are not in conflict.

The Court of Federal Claims is not bound to follow a precedent set by the Board of Tax Appeals more than 50 years ago and, moreover, a central term at issue in *Wilson*—the definition of "person"—is no longer entirely applicable to the present case because §§ 151 and 152 do not contain it.[3] Nonetheless, *Wilson* represents a federal judicial precedent entirely on point with the essential issues in this case, and plaintiffs have failed to make a compelling argument as to why this court should disregard that precedent.

Defendant invokes the doctrine of legislative re-enactment, by which courts must presume that Congress has taken into account the judicial and administrative interpreta-

---

**2.** A similar provision appears at § 2503(b) of the current I.R.C.

**3.** The operative word in § 152(a) in the 1954 Code and the 1986 Code is "individual." In its everyday sense, however, the term is synonymous with "person," the latter term being distinguishable only when applied to entities other than natural persons. Certainly, Congress did not intend to change the meaning of the provision

when it substituted the word "individual" for "person." The Supreme Court, in considering the rights of the unborn under the Fourteenth Amendment to the Constitution, observed, after reviewing a broad range of common and statutory laws, that "the unborn have never been recognized as persons in the whole sense." *Roe v. Wade*, 410 U.S. 113, 162, 93 S.Ct. 705, 731, 35 L.Ed.2d 147 (1973).

tions of its statutes when it substantially re-enacts them without change in respect of those interpretations. *Lindahl v. Office of Personnel Management,* 470 U.S. 768, 783 n. 15, 105 S.Ct. 1620, 1629 n. 15, 84 L.Ed.2d 674 (1985) (citations omitted); *see also United States v. Correll,* 389 U.S. 299, 305–06, 88 S.Ct. 445, 448–49, 19 L.Ed.2d 537 (1967). Although this court is faced with a provision of the I.R.C. which Congress has re-enacted numerous times since *Wilson,* plaintiffs have made the point that the Supreme Court in *Lindahl* did not rely merely on the "bare force of this presumption"; rather, the Court proceeded to examine the legislative history to corroborate Congress's intentions. *Lindahl,* 470 U.S. at 782–83, 105 S.Ct. at 1628–29. Therefore, in the present case the court must examine whether there is any evidence in the legislative record that would indicate that Congress intended to make the dependent exemption available in respect of unborn children.

### 2. *Legislative History.*

■■■ When interpreting an undefined term appearing in a statute, a court first looks to the plain meaning of the words used. When further guidance as to the meaning of a word is needed, the court may then consult the legislative history of the statute. When the legislative history does not reveal the appropriate meaning, it is helpful to resort to dictionaries and apply the common meaning of the term. *See, e.g., Reese v. United States,* 28 Fed.Cl. 702, 706 (1993), and *Ashland Oil, Inc. v. Commissioner,* 95 T.C. 348, 356–57, 1990 WL 139423 (1990). Whichever approach is taken, the ultimate goal of statutory construction is to determine the intention of Congress. *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 459, 94 S.Ct. 690, 693–94, 38 L.Ed.2d 646 (1974); *Johns–Manville Corp. v. United States,* 855 F.2d 1556, 1559–60 (Fed. Cir.1988).

In the present case, the statute at I.R.C. § 152(a)(1) includes "a son" in the list of individuals who define the term "dependent." The term "son," however, is not itself defined in the text of the statute or the legislative history. Plaintiffs have offered the definition of "son" appearing in Webster's New World Dictionary (Simon & Schuster 1990): "1. a boy or a man in his relationship to his parents; 2. a male descendant...." Defendant has countered with the etymology given for the same word in the 1955 edition of the same dictionary—essentially contemporaneous with the 1954 Revenue Act—indicating that the word "son" was derived from Indo–European terms which literally meant "the child bearing" or "the birth." The definition given in the 1955 edition, however, is substantially the same as the one provided by the 1990 edition. Neither of these definitions, moreover, unambiguously establishes that the term "son" ordinarily includes an unborn child.[4]

Plaintiffs nonetheless contend that Jonathan Cassman comes within the definition of dependent under §§ 151 and 152 because he became their "son" at the moment of conception. At that moment, they argue, his sex was determined, and the word "son" thus describes his relationship to plaintiffs from that point forward. Plaintiffs claim they are entitled to take the deduction based on the moment of their son's conception because §§ 151 and 152 do not specify that a dependent must be "born" before the exemption is available.

Defendant counters that, regardless of the absence of the word "born" in the statutory language, plaintiffs have the burden of showing that Congress clearly authorized an exemption for unborn children when it enacted these provisions. *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934) ("A taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms."). Defendant argues that plaintiffs have not carried that burden. Moreover, defendant asks the court to draw inferences

---

4. It is true, as plaintiffs have pointed out, that for certain legal purposes the word "child" has been construed to include an unborn child. See BLACK'S LAW DICTIONARY 239, (6th ed. 1990). As with the Board of Tax Appeals' *Faulkner* case, however, these are cases where courts were concerned with protecting rights granted by law to the unborn. They are distinguishable from the present case, where the rights of the unborn are not at stake.

from the current statutory language and the legislative history to make clear that Congress never intended these provisions to apply to the unborn.

Defendant first points out that, under § 152(b)(3), "the term 'dependent' does not include any individual who is not a citizen or national of the United States unless such individual is a resident of the United States or of a country contiguous to the United States." The term "citizen" is not defined in the I.R.C., so it is appropriate to refer to the definition of "nationals and citizens of the United States at birth" as set forth in the Immigration and Nationality Act at 8 U.S.C. § 1401. As defendant points out, the principal definition of "citizen or national of the United States" under § 1401 is "a person *born* in the United States and subject to the jurisdiction thereof" (emphasis added). Whether or not Congress specifically intended to exclude the unborn when defining "citizen or national of the United States," the language of § 1401 unambiguously does exclude them.

Having thus determined that Jonathan Cassman, prior to his birth, did not meet the definition of "citizen of the United States," the question remains whether he could, alternatively, be considered a "resident of the United States or of a country contiguous to the United States" under § 152(b)(3). Plaintiffs argue that Jonathan Cassman was a resident of the United States prior to his birth because his mother was a resident, and they ask the court to take judicial notice of the fact that it would have been physically impossible for the mother to be a resident and her unborn child not to be a resident. This argument is without merit. The court cannot justify viewing an unborn child as "residing" anywhere; moreover, it would also be unreasonable for the court to view the unborn differently for the purposes of the terms "citizen" and "resident." The court declines to accept plaintiffs' interpretation and concludes that Jonathan was neither a "citizen" nor a "resident" of the United States on December 31, 1991.

Defendant has also drawn our attention to the legislative background concerning the citizenship requirement of § 152. When members of Congress were deliberating the Revenue Act of 1954, they became concerned for taxpayers living in the Philippines and the Panama Canal Zone who were subject to United States taxation, but who could not take advantage of the dependent exemption for some of their dependents because of the citizenship or residence requirement. To grant taxpayers in these territories the benefit of the exemption, Congress made an exception to the citizenship or residence requirement for dependents who were residents of the Canal Zone, the Republic of Panama and, in some cases, the Philippines. To qualify for the Philippines exception, a child had to be:

> *born* [to the taxpayer] or legally adopted by him, in the Philippine Islands before 1946, if the child is a resident of the Republic of the Philippines, and if the taxpayer was a member of the Armed Forces of the United States at the time the child was *born* to him or legally adopted by him.

I.R.C. § 152(b)(3) (1954) (emphasis added). This language demonstrates that § 152 did at its 1954 inception make reference to birth in the context of the dependent exemption. The language referring to the Canal Zone, Panama and the Philippines was deleted from the Code only in 1976, by which time it had become obsolete because children born before 1946 in the Philippines would have been well over 19 or 24 years old. Plaintiffs ask the court to view this language in isolation from the surviving portions of § 152(b) and to infer that Congress intended to impose a "birth requirement" on residents of the Philippines, but not on other taxpayers' dependents. At the same time, plaintiffs maintain that when Congress repealed the language with respect to the Philippines, § 152's "birth requirement" was repealed as well. As discussed above, however, the I.R.C., both in 1954 and as currently written, makes reference to United States citizenship, which federal law both then and now defines in terms of birth. The court, therefore, is not persuaded that birth is no longer a relevant consideration under §§ 151 and 152. Furthermore, defendant has pointed out that Congress, when addressing the Philippines, made reference not merely to birth but to

birth *before July 5, 1946.* *See* H.R.Rep. No. 1337, 83d Cong., 2d Sess. 4044 (1954). The time of the birth of the taxpayer's child was relevant in the context of the Philippines because before July 5, 1946, the Philippine Islands were a commonwealth of the United States. This explanation of why birth is only specifically mentioned in the context of the Philippines is persuasive. The court, thus, cannot agree with plaintiffs' contention that the reference to the birth of a dependent must be inferred as a special requirement that was imposed only on taxpayers living in the Philippines.

Wholly apart from the focus on the subject of citizenship or residence, however, the court observes that one other element of § 151 suggests that Congress did not intend the exemption to be available in respect of an unborn child. Section 151 reads in part:

(c) Additional Exemption for Dependents—

. . . .

(1) In general.—An exemption of the exemption amount for each dependent (as defined in section 152)—

. . . .

(B) who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student who has not attained the age of 24 at the close of such calendar year.

There is nothing remarkable in this language, but the court notes that the imposition by Congress of age limits would be impracticable if the age of dependents was to be determined by reference to the date of conception rather than the date of birth, which is the universally accepted point of reference by which an individual's age is measured. If age is a factor in determining an individual's eligibility as a dependent, then certainly that individual's date of birth must also be a factor.[5] The language thus further belies plaintiffs' claim that birth is irrelevant to § 151 as Congress has amended it in the years since *Wilson* was decided by the Board of Tax Appeals.

In light of the citizenship or residence requirement, as well as the age restrictions on child-dependents, the court concludes that Congress did not intend to authorize a dependent exemption with respect to an unborn child. The plaintiffs have failed to persuade the court otherwise; therefore, the court will follow the precedent set by the Board of Tax Appeals in *Wilson* and deny plaintiffs' recovery.

### 3. *I.R.S.'s Administrative Interpretations.*

Having already disposed of the principal issue in this case by examination of the judicial precedents and the legislative background of §§ 151 and 152, the court need not draw any conclusions with respect to the remaining issues raised by the parties, namely, whether the I.R.S.'s longstanding interpretation of the dependent exemption as requiring a live birth should be upheld. However, the court observes that the conclusion reached above is consistent with the I.R.S.'s longstanding administrative interpretation of the statute.

Defendant has directed the court's attention to a pair of Revenue Rulings issued since *Wilson* which are consistent with the I.R.S.'s interpretation of the availability of the dependent exemption as contingent upon birth. First,[6] Revenue Ruling 73–156, held

---

**5.** The Revenue Act of 1943 re-enacted the dependent exemption of the former § 25(b) with the limitation that dependents must be under 18 years of age or be mentally or physically handicapped. In the report issued when that piece of legislation was brought before the House, the Ways and Means Committee said, "With respect to the credit for dependents if the age of the person for whom credit is claimed is a factor, it is contemplated that the allowance of the credit be determined *by reference to the birthday* of the dependent. Thus, if the status determination date of the taxpayer is July 1 of the taxable year,

the credit would be allowed for a child born upon such date." H.R.Rep. No. 871, 78th Cong., 1st Sess. 41 (1943) (emphasis added). Though Congress has since raised the age limit to 19 and repealed the requirement to prorate the exemption amount, the explanation of the basic principles is helpful today, where the age of a child is still relevant to determining his or her eligibility as a dependent.

**6.** Defendant also submits a "Special Ruling" issued by the I.R.S. in 1945 to a taxpayer who had

that an exemption could be claimed for a child who was born during the taxable year but who lived only momentarily, provided that the applicable state law treated the child as having been born alive and "such treatment is evidenced by an official document, such as a birth.certificate." That ruling was later clarified in Revenue Ruling 85–118, where the I.R.S. held that an exemption could not be claimed in respect of a pregnancy that ended in an induced abortion. Although these rulings are factually distinguishable from the present case, they do make clear that the Commissioner has a longstanding position that a live birth is a prerequisite for claiming a dependent exemption under §§ 151 and 152. Because Congress, in I.R.C. § 7805(a), assigned to the Commissioner of Internal Revenue the task of prescribing rules and regulations for the implementation of the I.R.C., courts customarily defer to the Commissioner's administrative interpretations provided that they fall within the scope of the legislative authorization and implement the law in a reasonable manner. *National Muffler Dealers Ass'n v. United States,* 440 U.S. 472, 475–77, 99 S.Ct. 1304, 1306–07, 59 L.Ed.2d 519 (1979); *Correll,* 389 U.S. at 307, 88 S.Ct. at 450.

■ Plaintiffs urge the court to disregard the Commissioner's longstanding administrative constructions of the statute because they do not have the force and effect of law. Indeed, Revenue Rulings generally do not establish a precedent which a court is bound to follow. Nonetheless, the rulings are useful in providing guidance as to how a statute should be interpreted. *See, e.g., Ridenour v. United States,* 3 Cl.Ct. 128, 136 (1983). Plaintiffs have cited two instances in which courts have explicitly rejected administrative interpretations, *Rowan Cos. v. United States,* 452 U.S. 247, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981), and *Hanover Bank v. Commissioner,*

369 U.S. 672, 82 S.Ct. 1080, 8 L.Ed.2d 187 (1962).

Both of these cases are easily distinguishable from the present case. In *Rowan,* the Supreme Court struck down a Treasury regulation which applied a different definition of "wages" for the purpose of Social Security and unemployment tax withholding than the one applied for the purpose of income tax withholding. The Court invalidated the regulation in the face of substantial evidence in the legislative record that showed Congress had intended the Commissioner to use a consistent definition of "wages" for each type of mandatory withholding tax, 452 U.S. at 257, 101 S.Ct. at 2294–95, as well as evidence that the I.R.S. itself had, in practice, applied the two definitions inconsistently. *See id.* at 261 nn. 16 & 17, 101 S.Ct. at 2297 nn. 16 & 17. By contrast to the ample evidence of congressional intent available in *Rowan,* plaintiffs in the present case have adduced only Congress's silence with respect to an explicit "birth requirement" in §§ 151 and 152.

*Hanover Bank* is likewise of no avail to plaintiffs. In that case, the Supreme Court was faced with an I.R.S. position with regard to the deductibility of corporate bond premiums under § 171 of the I.R.C. of 1954 and its predecessor, § 125 of the I.R.C. of 1939. With regard to how the deduction was to be calculated, the Commissioner took a more restrictive position than Congress had intended because he detected a sizable loophole that would have resulted in a windfall deduction for the taxpayer. Because the legislative record demonstrated that Congress had carefully crafted the provisions without imposing the restriction applied by the Commissioner, the Court declined to authorize the Commissioner's position through judicial fiat. *Hanover Bank,* 369 U.S. at 687–88, 82

---

inquired whether he could take a credit against his income in respect of a stillborn child. The I.R.S., without citing any specific cases, disallowed the credit: "The Courts have held that for income tax purposes an unborn child is not yet a "person" and that the credit for a dependent is allowable only for a living human being or individual."

A "Special Ruling" from 1945 is analogous to a Private Letter Ruling today. Likewise, it has

no precedential value. *Rowan Cos. v. United States,* 452 U.S. 247, 261 n. 17, 101 S.Ct. 2288, 2297 n. 17, 68 L.Ed.2d 814 (1981). The court acknowledges the ruling only to show that the agency charged with administering the I.R.C. has taken a consistent position with respect to dependents in the years since *Wilson.* The I.R.S.'s position concerning the necessity of a live birth has been included in taxpayer instruction manuals since at least 1945.

S.Ct. at 1088–89. Plaintiffs in the present case have presented nothing in the legislative record to support their contention that Congress had considered and disagreed with the position taken by the I.R.S., at least since *Wilson,* with respect to the unborn. Unlike the Commissioner in *Hanover Bank,* who acted outside of the scope of congressional authorization out of a concern for preventing a windfall deduction, the I.R.S.'s position in this case that a live birth must precede the availability of a dependent exemption reflects only a desire to implement the statute in a reasonable and efficient manner. Moreover, the court could not rule in plaintiffs' favor without reversing the longstanding administrative precedents discussed above. Without a compelling argument for doing so, the court is not inclined to reverse those rulings.

This brings the court to its final consideration: Defendant adduces that sound policy and enforcement rationales support the exclusion of the unborn from the definition of "dependent." Birth, as defendant points out, is a clearly defined event, providing a bright line by which the availability of the exemption can be determined. Moreover, defendant argues, to allow a deduction based on conception, rather than live birth, would create confusion because of the uncertainty regarding the date when a particular conception occurs. Plaintiffs respond that tax compliance is already burdensome and that reluctance to impose added administrative burdens on taxpayers and the I.R.S. should not dissuade the court from finding in the plaintiffs' favor.

The court agrees with defendant. In doing so, the court is concerned with the potential for increased administrative burdens both on the I.R.S. and on the taxpayers. A live birth, by operation of state and local law, results in the issuance of a birth certificate, which is a universally accepted and administratively efficient document of identification. In the present case, it is no coincidence that the principal evidence that plaintiffs have submitted—apart from an affidavit—to indicate that Mrs. Cassman was pregnant during 1991 is the birth certificate issued for her son in July of 1992. The birth certificate itself demonstrates that plaintiffs have a son. If the court held, as plaintiffs urge, that the dependent exemption was available as of the date of conception, then the exemption would be available for pregnancies that never resulted in live births and the issuance of a birth certificate, including those pregnancies ending in miscarriages, induced abortions, and stillbirths. In the absence of any clear evidence of congressional intent to do otherwise, the court must spare taxpayers and the I.R.S. the administrative burden of establishing that such pregnancies occurred or did not occur.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted and plaintiffs' cross-motion for summary judgment is denied.

The Clerk shall enter judgment accordingly. No costs.